672 P.2d 577

**FEARLESS FARRIS WHOLESALE, INC., Plaintiff-Respondent,**

v.

**William E. HOWELL and Mary J. Howell, husband and wife, Defendants-Appellants.**

**No. 14023.**

Court of Appeals of Idaho.

Nov. 17, 1983.

Charles L. Hay, of Elam, Burke, Evans, Boyd & Koontz, Boise, for appellants.

Larry L. Grant, of Parkinson, Lojek & Penland, Boise, for appellee.

WALTERS, Chief Judge.

Pursuant to two loan agreements, Fearless Farris loaned the Howells $61,000 to finance construction of a retail gasoline out-

let and an additional $8,400 to apply to the principal due on the land purchase contract which encumbered the construction site. However, the Howells did not execute a promissory note, for repayment of the first loan, as required by the first loan agreement. The Howells also failed to execute a deed, conveying title to the construction site, and an assignment of the land purchase contract, under which they had purchased the site, in favor of Fearless Farris. These documents were to provide Fearless Farris with security for both of the loans it made to the Howells, and were to be returned when the loans were repaid.

The first loan agreement also required the Howells to execute, in favor of Fearless Farris, a "standard supply contract" which Fearless Farris used in supplying petroleum products to customers similar to the Howells. Such a contract was never presented to the Howells by Fearless Farris for execution.

In January 1979, Fearless Farris cut off credit to the Howells for the purchase of petroleum products after the Howells allowed their account balance to exceed an agreed credit limit. After that time, the Howells failed to make the payments required by the loan agreements and they did not purchase any petroleum products for cash. In a separate lawsuit, the parties resolved the issues concerning amounts due under the account for the purchase of petroleum products.

In the instant litigation, Fearless Farris sued the Howells, alleging breach of the loan agreements. The trial court entered judgment in favor of Fearless Farris. The court ordered the Howells either to pay the total amount of principal loaned together with interest accrued under both agreements, or to execute the documents required by the agreements and to pay sums of money to Fearless Farris to bring the Howells current with their contractual duties.

The Howells have appealed. First, they argue that the court erroneously found there was no standard supply contract, when it should have found that there was a contract formed by conduct of the parties. Alternatively, the Howells argue that the court should have found that a standard supply contract was required as an obligation of the first loan agreement. They assert that Fearless Farris breached this obligation by failing to present the supply contract to the Howells for execution. Consequently, they contend the court should have made findings concerning the damages flowing from Fearless Farris' breach.

The Howells also take issue with a finding as to accrual of interest under the second loan agreement. They submit that the finding of a date of accrual is not supported by substantial, competent evidence. Further, they allege the trial court improperly delegated its duty of preparing findings of fact and conclusions of law to Fearless Farris, by adopting Fearless Farris' proposed findings and conclusions almost verbatim. Finally, the Howells assert that an award of attorney fees, pursuant to I.C. § 12–121, was improper because the findings required by I.R.C.P. 54(e)(2) as a prerequisite to that award were not made. We affirm the trial court in all respects.

The following facts are undisputed. Fearless Farris had supplied gasoline to the Howells on open account during several years for retail sale at the Howells' two gas stations. Originally the parties had agreed that the Howells would pay for each load of gasoline before Fearless Farris would deliver the next load. Later, the Howells executed a promissory note which enabled Fearless Farris to extend to the Howells up to $30,000 in credit, for the purchase of petroleum products on open account. To secure payment of the open account, the Howells executed a deed of trust on one of the two stations, naming Fearless Farris as beneficiary.

In 1977, the Howells and Fearless Farris negotiated the two loan agreements at issue here. In the first loan agreement, Fearless Farris agreed to lend up to $40,000, at ten percent interest, to the Howells to be used to finance construction of a new retail gasoline outlet. The site of construction was a corner of a nine and one-half acre parcel of

land which the Howells were purchasing by contract from a third party.

This loan agreement provided that the Howells were to execute, when construction was completed, a promissory note calling for repayment of the loan at $100 per load of petroleum products, but not less than $530 per month. To secure payment of this note, the Howells were to execute, in favor of Fearless Farris, an assignment of the land contract through which they were purchasing the nine and one-half acre parcel and they were to execute and deliver to Fearless Farris deeds to portions of the property, also in favor of Fearless Farris. All documents were to be returned to the Howells when the loan was repaid.

The second loan agreement was executed by both parties on the same day the first agreement was executed. To insure that the Howells would not need to resort to other sources of financing to finish construction of the outlet, Fearless Farris agreed to provide up to an additional $25,-000 in financing for construction plus any money which was necessary to make payments required by the land purchase contract for the site. The Howells were to pay interest at the rate of twelve percent per annum on the outstanding balance of this loan from the date of the first advance. Also the Howells were required to pay an annual fee of $5,000, beginning one year from the date of the first advance, for the "use" of the money and the facilities. The principal amount of the loan and all fees and interest accrued were to be repaid not later than September 1, 1982.

To secure payment of the second loan, the Howells were required to execute an assignment of the real estate contract which encumbered the construction site and a warranty deed conveying title to the entire nine and one-half acre parcel. If the Howells did not comply with the repayment schedule, Fearless Farris was given the option of immediately recording the assignment and warranty deed. The property then would "become the sole possession" of Fearless Farris.

As mentioned previously, the Howells did not execute any assignments or deeds in favor of Fearless Farris. They also did not execute the promissory note required by the first loan agreement. Further, Fearless Farris did not present a supply contract for execution by the Howells.

## I. THE SUPPLY CONTRACT

We will address first the Howells' contention that the trial court erred in making two particular findings regarding a contract between the parties to supply gasoline. In this regard, the court found that the Howells had "failed to prove the existence of a contract between the parties for a supply of gasoline and other products which [Fearless Farris] has breached." The court also found that the Howells had "failed to show they have been damaged by any breach of [Fearless Farris] as regards any contract for the purchase and sale of gasoline by [Fearless Farris] to the [Howells]." The second finding need not be examined if the first is upheld.

The Howells contend the first finding is in error for two reasons. First, they point to the loan agreement which required execution of a "supply contract" in favor of Fearless Farris similar to those contracts used to supply petroleum products to other customers. The Howells argue that Fearless Farris' failure to provide such a contract constituted a breach of the loan agreement by Fearless Farris. Second, because gasoline was in fact supplied by Fearless Farris to the Howells, the Howells argue that the evidence supports a finding that a "contract of some type" existed. The Howells contend that Fearless Farris breached such a contract when it stopped supplying gasoline to them.

In their pleadings, the Howells raised the question of the existence and breach of a supply contract as a counterclaim for recovery of damages allegedly suffered from Fearless Farris' conduct. The Howells did not assert the claimed breach of contract i.e., the failure of Fearless Farris to provide a standard supply contract, as an affirma-

tive defense which might bar Fearless Farris from recovering on its complaint.

■ Witnesses for both parties testified that no written supply contract was ever executed between the parties. In so far as the trial court found that Howells failed to prove the "existence" of a written contract under the terms of the loan agreement, such a finding is not clearly erroneous and will be upheld. I.R.C.P. 52(a).

■ Even if we assume the existence of an oral contract, or a contract implied from the parties' conduct, the district court's findings need not be disturbed. Any such agreement was based upon an open credit account. When the Howells exceeded a credit limit, Fearless Farris simply refused to supply any further petroleum products to the Howells except upon a cash-on-delivery basis. Thereafter the Howells did not make any cash purchases from Fearless Farris. It is clear that Fearless Farris did not breach any contract to supply gasoline, but rather refused to continue to extend credit beyond a designated limit. If there was any breach of an oral or implied contract, it was committed by the Howells who caused the credit limit to be exceeded. Thus the trial court's ultimate finding, that the Howells had failed to prove the existence of a contract which Fearless Farris had breached, is not clearly erroneous. It is upheld. I.R.C.P. 52(a).

## II. DATE OF THE FIRST ADVANCE

The Howells argue that the trial court erroneously found that the first advance of money under the second loan agreement occurred on May 4, 1978 and therefore that interest accrued from this date. They contend that this date is when electronic gasoline pumps were delivered to Fearless Farris, but that these pumps were never delivered to or installed at their new gasoline station and they should not have been charged for the pumps. If this charge is deleted from Fearless Farris' running balance of money advanced, then the balance did not exceed $40,000 until September 15, 1978. The Howells contend that no money was advanced on the second agreement un-

til that date. Therefore, they argue, interest could not begin accruing under the second agreement until September 15, 1978, and the first $5,000 annual use fee would not have been due until one year after that date.

■ Fearless Farris charged the Howells for gasoline pumps when the supplier of the pumps billed Fearless Farris for the pumps. At that point, the pumps were available for delivery to the Howells. However, it is undisputed that the Howells decided not to accept those pumps and they were never delivered. Instead, other pumps were purchased to replace the rejected ones. An employee of Fearless Farris testified that the Howells had ordered the rejected pumps through Fearless Farris. There is no testimony disputing the implication that the pumps were delivered to Fearless Farris at the Howells' direction. Substantial, competent evidence supports the trial court's finding that the Howells were properly charged for the pumps. I.R.C.P. 52(a); *Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct. App.1983).

■ The Howells also contend that the annual use fee should be prorated to reflect the portion of the maximum $25,000 loan which was outstanding at any time. Initially, we note that the second loan agreement provides that Fearless Farris will provide *up to* $25,000 of additional financing. In addition to payment of interest at twelve percent per annum, the Howells were required, by the second loan agreement, to pay "the total sum of $5,000 as and for an annual fee for the continued use of the money, and the facility purchased by the said funds." The agreement further provided that this fee would be due one year from the date of the first advance under this agreement, regardless of the amount of the first advance. In providing for repayment of the loan, the amount of the principal outstanding is not a factor which is to be taken into account. The agreement provides only that the fee will be reduced, in the year in which the loan is totally repaid, "on a pro rata basis, considering the *num-*

ber of months since the last annual payment." The Howells' argument that the annual use fee should be prorated based on the amount of the loan outstanding is contrary to the agreement. We reject it.

## III. PREPARATION OF FINDINGS OF FACT

Next, we must determine whether the trial court improperly delegated its duty of preparing findings of fact and conclusions of law to Fearless Farris, by adopting Fearless Farris' proposed findings and conclusions almost verbatim. At the close of evidence, the court directed that both parties should submit proposed findings of fact and conclusions of law within twenty days. Almost three months later, Fearless Farris complied with the court's direction. The Howells never did.[1]

When the court sits as the trier of fact, it must prepare findings of fact and conclusions of law. I.R.C.P. 52(a). Our Supreme Court has disapproved of the practice of delegating that duty to counsel for the winning party. Compton v. Gilmore, 98 Idaho 190, 560 P.2d 861 (1977). The Supreme Court has suggested that, if counsel's assistance is requested, the request should be made of counsel for both parties. 98 Idaho at 194, 560 P.2d at 865. The trial court should then exercise its independent judgment in selecting or rejecting individual proposed findings and conclusions prepared by the parties. Id. at 195, 560 P.2d at 866. Here, the trial court sought the assistance of both parties in preparing proposed findings and conclusions. Only Fearless Farris responded. Its proposed findings and conclusions were modified by the court, indicating to us the exercise of independent judgment by the court. We hold that no error occurred.

## IV. AWARD OF ATTORNEY FEES

Finally, the Howells dispute the award of attorney fees made in favor of Fearless Farris. The Howells argue that the trial court failed to comply with I.R.C.P. 54(e)(2), which rule specifically requires written findings as to the basis and reasons for an award of attorney fees made pursuant to I.C. § 12–121. Howells also point out that Fearless Farris' memorandum of costs and fees was not verified (I.R.C.P. 54(d)(6)) nor supported by affidavit (I.R.C.P. 54(e)(5)).

However, Fearless Farris contends that the Howells should not be allowed to raise the award of attorney fees as an issue on this appeal because the Howells failed to timely object, in the court below, to the fees requested, as required by I.R.C.P. 54(e)(6) and 54(d)(6). We agree. Failure to timely object to a memorandum of costs and attorney fees constitutes a waiver of the right to contest the requesting party's entitlement to the fees sought. Conner v. Dake, 103 Idaho 761, 653 P.2d 1173 (1982). This does not mean the trial court automatically must award the full amount specified in the memorandum. See Operating Engineers Local Union 370 v. Goodwin Construction Co. of Blackfoot, 104 Idaho 83, 656 P.2d 144 (Ct.App.1982). But it does mean that the party who fails to object has waived its right to contest any award within the amount sought. Therefore, we hold that, having failed to object to Fearless Farris' memorandum in support of an award of attorney fees, the Howells cannot now be heard to complain either concerning the form of the request or that the court erred in failing to make a written finding as to the basis and reasons for awarding such fees to Fearless Farris.

The judgment is affirmed. Costs to respondent, Fearless Farris. No attorney fees allowed on appeal.

SWANSTROM and BURNETT, JJ., concur.

---

1. The Howells are represented in this appeal by counsel other than the attorney who represent-

ed them at trial.