720 P.2d 643

**WEFCO, INC., an Idaho corporation, Cross Claimant-Respondent,**

v.

**MONSANTO COMPANY, a foreign corporation, Cross Defendant-Appellant.**

**No. 16025.**

Court of Appeals of Idaho.

May 9, 1986.

Petition for Review Granted June 30, 1986.

---

J. Robert Alexander, Twin Falls, Patrick Durick (argued), Bismarck, N.D., for cross defendant-appellant.

James B. Lynch, Patrick Dennis Furey and Charles Clark (argued) Imhoff & Lynch, Boise, for cross claimant-respondent.

WALTERS, Chief Judge.

Monsanto Company appeals from a judgment in favor of cross-claimant Wefco, Inc. Wefco, a seller of farm supplies, was awarded its costs and attorney fees in defending against a product liability suit filed by Paul and Katherine Borchard. The Borchards claimed damages from a defective product. Wefco filed the cross-claim because the product manufacturer, Monsanto, failed to accept Wefco's tender of defense under the Idaho Product Liability Reform Act. In a case of first impression, Monsanto argues on appeal that the district court erred in awarding costs and attorney fees to Wefco. Monsanto asserts it had no duty under the Act to defend Wefco because the Borchards had alleged an independent claim against Wefco for breach of an express warranty. We affirm the award of costs and attorney fees.

This case comes to us with the following background. The Borchards brought suit against Monsanto for the alleged failure of a herbicide ("FARGO") to control wild oats. They also sued Monsanto and Wefco for breach of express warranty concerning the product. As provided by I.C. § 6–1407 [1], Wefco sought to absolve itself of liability for the defective herbicide. With exceptions not applicable here, section 6–1407 provides that product sellers shall not be subject to liability where they acquire the product in a sealed container and sell the product in the same sealed container. Wefco received and sold Monsanto's herbicide in the same sealed container. In a letter to Monsanto's attorney dated January 28, 1982, Wefco tendered defense of the action to Monsanto. Monsanto declined Wefco's tender, "based upon the allegations in Plaintiff's [sic] complaint as to the WEFCO expressed warranties." Wefco then filed a cross-claim on April 14, 1982, against Monsanto for indemnification, costs, and attorney fees under I.C. § 6–1407(2).

Over the next nine months, Wefco twice again tendered the defense to Monsanto. Two months after Wefco's third tender, Monsanto agreed to accept the defense based on the deposition of Paul Borchard which indicated Wefco had made no representations or warranties to the plaintiffs other than those contained on the herbicide label. Monsanto submitted an indemnification and defense agreement to Wefco on March 29, 1983. This agreement provided that Monsanto would assume the defense

---

1. Chapters 93 and 225 of 1980 Idaho Sess.Laws each purported to enact a new Chapter 13 in Title 6 of the Idaho Code. The Idaho Code Commissioners designated Chapter 225, the Idaho Product Liability Reform Act, as Title 6, Chapter 14.

of Wefco but proposed to limit Monsanto's liability to the amount of general damages specified in the complaint. The agreement further provided that Monsanto would not assume any of Wefco's liability for punitive or exemplary damages. The record contains no reply from Wefco. In September 1983, Monsanto again inquired whether Wefco accepted Monsanto's defense agreement, but there is no reply to that inquiry in the record.

After changing counsel, the Borchards at a pretrial conference in February 1984 would not stipulate to the lack of an independent claim against Wefco but their counsel promised to investigate. Wefco moved to dismiss the complaint against it and for summary judgment on the cross-claim for Monsanto's refusal to assume Wefco's defense. After his investigation, Borchards' counsel determined that his clients did not have an independent cause of action against Wefco. The parties then entered into a stipulation to that effect. In accordance with this stipulation, the district court dismissed the Borchards' claim against Wefco and bifurcated Wefco's cross-claim against Monsanto from the Borchards' remaining product liability action. In dismissing the warranty claim against Wefco, the court awarded Wefco "*$5,960.10* [handwritten] in costs and attorneys' fees against the plaintiffs." Although this March 22, 1984 judgment was mailed to the parties, the court later determined that the copy of the judgment that was mailed to the parties did not contain the handwritten dollar amount.

After receiving briefs from Wefco and Monsanto, the court entered a memorandum opinion on June 6, 1984, granting summary judgment to Wefco on its cross-claim. Although filed, this opinion was not sent to the parties. When it was subsequently learned that the parties had not received the opinion, the court issued a "Declaratory Judgment" on April 12, 1985. The judgment stated: "Monsanto is liable to Wefco for any fees and costs not recovered from plaintiffs by Wefco pursuant to the judgment previously entered herein dated March 22, 1984. Good faith effort must be made by Wefco to recover the above costs from plaintiffs."

When the Borchards discovered that costs and fees had been assessed against them in the March 22 judgment, they objected. The court then ordered Wefco to apportion costs and fees for its defense between the Borchards and Monsanto. Monsanto filed its notice of appeal forty-one days after the April 12 "declaratory judgment." Wefco submitted its apportioned costs and fees memorandum a week later. Based upon Wefco's final costs and fees memorandum, the court on June 13, 1985, awarded Wefco $425.60 in costs against the Borchards. The court also assessed $180.25 in costs and $2,909 in attorney fees against Monsanto for "having unreasonably and frivolously rejected the tender of defense made by Defendant seller Wefco pursuant to statute and common law."

On appeal, Monsanto argues that the Borchards' complaint alleged an independent cause of action against Wefco for breach of express warranty. Consequently, Monsanto asserts that it had no duty to defend Wefco against the Borchards' independent claim. Wefco argues (1) Monsanto's appeal from the "declaratory judgment" is jurisdictionally defective because the judgment was not a final judgment; (2) Monsanto waived any objection to the award of attorney fees and costs because it did not object within ten days as required by I.R.C.P. 54(d)(6); and (3) an award of costs and fees was appropriate because Monsanto either unreasonably refused the tender of defense made under I.C. § 6–1407, or Monsanto unreasonably and frivolously defended against Wefco's cross-claim (I.C. § 12–121). Wefco also seeks attorney fees on appeal. We will first dispose of the procedural questions.

I

■ Wefco moved for summary judgment, claiming that it was entitled to its costs and fees under I.C. § 6–1407(1) and (2). The district court's memorandum opin-

ion of June 6, 1984, granted Wefco's motion for summary judgment. The court found "that Monsanto's tender [sic] of Defense was not satisfactory," and, consequently, ruled "Wefco is entitled to a Declaratory Judgment." Wefco characterizes the April 12, 1985 "Declaratory Judgment" [2] as "interlocutory" and not a final judgment. It claims the only final judgment in this case was the judgment filed June 13, 1985, which delineated the costs and fees assessed against Monsanto. Wefco argues the April 12 judgment was not final, and thus not appealable, because it did not actually fix the amount of costs and attorney fees against Monsanto. We disagree.

The April 12 "declaratory judgment" decided the substantive issue concerning the tender of defense. Appellate Rule 11(a)(1) allows an appeal as a matter of right from a final judgment or decree. The final judgment referred to in Rule 11(a)(1) means a "final determination of the rights of the parties." *Nelson v. Whitesides*, 103 Idaho 374, 376, 647 P.2d 1246, 1248 (1982). *See M & H Rentals, Inc. v. Sales*, 108 Idaho 567, 700 P.2d 970 (Ct.App.1985). At a hearing on May 13, 1985, the court stated the reason for issuing the "Declaratory Judgment" was to hold Monsanto liable to Wefco for any costs and fees not recovered from the Borchards. The court noted once costs and fees had been collected against the Borchards, Monsanto would owe the balance and the court would enter a judgment accordingly. Only the actual amount of costs and fees that were apportionable to Monsanto remained undetermined. Because the April 12 judgment was a final determination of the parties' rights, it was an appealable order. I.A.R. 11(a)(1).

■ Wefco next asserts Monsanto waived all objections to the costs and fees when it failed to object within ten days of the June 13 assessments. I.R.C.P. 54(d)(6), (e)(6). Rule 54(d)(6) provides: "Failure to

timely object to the items in the memorandum of costs shall constitute a waiver of all objections to the costs claimed." Monsanto submits it did object to the awarding of *any* costs and fees by appealing the April 12 judgment. It is clear from the record Monsanto did appeal the declaration that costs and fees be awarded to Wefco. The company's appeal does not go to the *amount* of the assessments but rather challenges the *authority* of the court to award fees. This case presents the unique situation where both substantive and procedural issues are involved in the award of costs and attorney fees. Unlike a case where the opposing party wholly fails to object to the prevailing party's request for costs and fees, *e.g., Fearless Farris Wholesale, Inc. v. Howell*, 105 Idaho 699, 672 P.2d 577 (Ct.App.1983), Monsanto did object to the awarding of costs and fees by appealing the April 12 judgment. We hold Monsanto properly preserved the question of awarding costs and fees for appeal but did not preserve an objection to any particular amount. *Devine v. Cluff*, 110 Idaho 1, 713 P.2d 437 (Ct.App.1985). We now turn to the merits of the substantive issue.

## II

■ Wefco argues and Monsanto contests that costs and fees in this case may be recovered under I.C. §§ 6–1407(2) or 12–121. In Count II of their complaint against Monsanto and Wefco, the Borchards alleged a breach of express warranty concerning "verbal instructions warranted to plaintiffs that said FARGO would kill wild oats." Wefco tendered the defense of this action to Monsanto per I.C. § 6–1407. Section 6–1407 provides in part:

(1) *In the absence of express warranties to the contrary*, product sellers [Wefco] ... shall not be subject to liability ... where the product seller acquires the product in a sealed package or con-

---

**2.** Although neither party sought a "declaratory judgment," the district court issued an opinion with this title. "Whether an instrument is a judgment turns upon its content and substance, not upon its title." *M & H Rentals Inc. v. Sales*,

108 Idaho 567, 569, 700 P.2d 970, 972 (Ct.App.1985). We need not decide whether the April 12 declaratory judgment would have been more properly given another title.

tainer and sells the product in the same sealed package or container. [Emphasis added.]

. . . .

(2) . . . any manufacturer [Monsanto] who refuses to accept a tender of defense from the product seller, shall indemnify the product seller for reasonable attorney's fees and costs incurred by the product seller in defending such action.

Thus, section 6–1407 relieves certain product sellers of liability and upon a tender of the defense, triggers the manufacturer's duty to indemnify the seller "in the absence of express warranties." The statute is silent as to the time period embraced by the duty to indemnify—does it begin with the seller's tender of defense (even if the absence of an express warranty is not judicially determined until later) or does it begin only after the absence of an express warranty has been judicially determined (which might not be until the end of trial or even after an appeal)? Monsanto argues that because the Borchards' complaint contains *allegations* that Wefco breached an express warranty, Monsanto had no duty to defend Wefco against the Borchards' independent claim. We are not persuaded by Monsanto's argument.

Idaho adopted several sections of the Model Uniform Product Liability Act when it enacted the Product Liability Reform Act in 1980. 44 Fed.Reg. 62,714, 62,726–27 (1979); I.C. § 6–1401 to –1409. An objective of the Model Act was to reduce the cost of defending product liability suits while insuring that persons injured by unsafe products be reasonably compensated. The comments to the Model Act note that relieving wholesalers, retailers and distributors of liability in circumstances where they do not have a reasonable opportunity to inspect the product, would reduce "product liability costs in terms of both premiums and defense costs." 44 Fed.Reg. at 62,726. "[F]or every dollar of claims paid, at least 35 cents is spent in defense costs." *Id.* (footnote omitted). Section 105 of the Model Act states in part:

Unless Subsection B [below] . . . is applicable, product sellers shall not be subject to liability in circumstances in which they did not have a reasonable opportunity to inspect the product in a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition.

(B) A product seller, other than a manufacturer, who makes an express warranty about a material fact or facts concerning a product is subject to the standards of liability set forth in [this Act].

44 Fed.Reg. at 62,726. Thus, under certain circumstances, product sellers are not subject to liability for merely selling a defective product. In particular, the drafter's analysis of section 105 declares "if a retailer receives a defective product in a sealed container and there is no way for the retailer to be aware of the [defective] condition, the retailer will not be held liable." *Id.* Thus, I.C. § 6–1407(1) and the Model Act relieve a product seller of liability if the allegedly defective product is received and sold in a sealed container—again, with exceptions not applicable here.

Idaho's Product Liability Reform Act also includes an indemnification clause. As quoted above, any manufacturer who refuses the seller's tender of the product liability defense, shall indemnify the seller for reasonable attorney fees and costs. I.C. § 6–1407(2). Although other states have similar indemnification statutes, ARIZ.REV.STAT.ANN. § 12–684 (1982); ARK.STAT.ANN. § 34–2806 (1982); N.D. STAT. 28–01.1–07 (Supp.1985), only Idaho's Act couples such an indemnification provision with a provision that absolves the seller of liability "[i]n the absence of express warranties." Here, the Borchards' complaint alleged that Wefco made such an express warranty that "FARGO would kill wild oats." We must determine the relationship between the indemnification clause and the express warranties exception. A number of jurisdictions have reached different conclusions when analyzing these distinct concepts.

In *Carpenter v. Technibilt Corp.*, 502 F.Supp. 153 (E.D.Tenn.1980), the federal district court found that the plaintiff's product liability complaint based on breach of warranties, was sufficient to survive the product seller's motion for summary judgment under the then-applicable Tennessee statute absolving the seller of liability.[3] The court found that the Tennessee Products Liability Act, under certain circumstances, would not permit a suit under strict liability, but would allow a suit against the product seller under warranty theories. *See also Pemberton v. American Distilled Spirits Co.*, (unpublished slip op.Tenn.Ct.App. Oct. 29, 1982) (available on LEXIS) (plaintiff's mere allegation of breach of warranty was sufficient to defeat the product seller's motion to dismiss). In commenting on the common law of indemnity, the Supreme Court of South Dakota observed that where a product seller was defending against accusations of its own wrongful conduct in addition to the conduct of the manufacturer, a court may properly disallow an indemnification request for attorney fees. *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D.1976). In these cases the manufacturer was not required to indemnify the product seller if the plaintiff's complaint alleged separate claims against the seller.

Other jurisdictions look beyond the allegations contained in the pleadings. In *Kaylor v. Iseman Mobile Homes*, 369 N.W.2d 101 (N.D.1985), the defendant-manufacturer in a product liability case asserted that the indemnification provision[4] contained in North Dakota's Product Liability Act was not applicable where independent actions of negligence were alleged against the product seller. After finding the indemnification statute ambiguous, the court stated that the intent of the indemnification statute was to allow indemnification in those cases where the manufacturer was found liable and the product seller was absolved of liability. The court stated that the availability of fees and costs "should not rest on the presence or absence of such pleading by a third party, who through an overabundance of caution or optimism alleges more (or less) than he can prove." *Kaylor*, 369 N.W.2d at 104, *quoting Peters v. Lyons*, 168 N.W.2d 759, 770 (Iowa 1969). Because the absence of express warranties is a question to be judicially determined, "the availability of costs and attorneys' fees [should be made] upon the findings of the trier of fact rather than upon allegations made in the parties' pleadings." *Id.* *See Winkler v. Gilmore & Tatge Manufacturing Co.*, 334 N.W.2d 837 (N.D.1983).

We find the reasoning of the North Dakota Supreme Court more persuasive. The intent of Idaho's Reform Act was to reduce defense costs and to relieve the product seller of liability under circumstances presented in this case. Once the product seller tenders the defense of the product action to the manufacturer, the manufacturer is then under a duty to assume the

---

3. Tennessee Code § 29–28–106 (1978) provided: (a) No product liability action ... shall be commenced or maintained against any seller when the product is acquired and sold by the seller in a sealed container and/or when the product is acquired and sold by the seller under circumstances in which the seller is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition. The provisions of the first sentence of *this subsection shall not apply to actions based upon a breach of warranty, express or implied,* .... [Emphasis added.]

4. The indemnification statute contained in North Dakota's Products Liability Act does not contain the "express warranties" exclusion as found in I.C. § 6–1407(1). The North Dakota indemnity statute, § 28–01.1–07, provides:

> If a product liability action is commenced against a seller, and it is alleged that a product was defectively designed, contained defectively manufactured parts, had insignificant safety guards, or had inaccurate or insignificant warnings; that such condition existed when the product left the control of the manufacturer; that the seller has not substantially altered the product; and that the defective condition or lack of safety guards or adequate warnings caused the injury or damage complained of; *the manufacturer* from whom the product was acquired by the seller *shall be required to assume the cost of defense of the action,* and any liability that may be imposed on the seller. [Emphasis added.]

defense. The manufacturer may then weigh the advantages and disadvantages of refusing the defense tender and awaiting the ultimate outcome of the warranty issue. We conclude that the statute intended that indemnity be provided in those cases where the seller has tendered the defense and is absolved of liability. Because Monsanto refused Wefco's tender of defense when the tender was first made and because it was ultimately determined that Wefco was not liable to the Borchards upon Borchards' alleged claim of breach of warranty, we hold that Monsanto must indemnify Wefco for Wefco's costs and attorney fees, under I.C. § 6–1407. Consequently we uphold the district court's award. Wefco's alternate claim of attorney fees under I.C. § 12–121 need not be discussed.

Accordingly, the summary judgment in favor of Wefco is affirmed. Costs and attorney fees on appeal awarded to Wefco, under I.C. § 6–1407.

BURNETT, J., and SMITH, J., Pro Tem., concur.