**Frederick Jerome KING, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–418.**

Court of Criminal Appeals of Oklahoma.

Jan. 5, 1988.

Gloyd McCoy, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Frederick Jerome King, was charged, tried, and convicted in the District Court of Payne County for the crimes of Robbery With a Firearm in Count I, and Forcible Sodomy in Count II. Punishment was set at seven (7) years, and eighteen (18) years imprisonment, respectively. From these judgments and sentences, he appeals.

On May 1, 1984, B.C. was working at the Stillclean Laundry in Stillwater, Oklahoma. As she was closing for the evening, the appellant entered the laundromat and requested to use the restroom. Minutes la-

ter, the appellant came out of the restroom and asked to use the telephone. As B.C. was gathering her books to leave, the appellant came around the corner with a gun, instructed her to open the cash drawer and had her assist him in removing the money and placing it in a bank bag. The appellant then told B.C. to get on her knees and forced her to perform oral sodomy upon him as he held her at gunpoint. The appellant then left and told B.C. not to leave the backroom or he would "blow her face off." Subsequently, she called the police.

Officers Randy Lowry and Billy Bartam, of the Stillwater Police Department, responded to the call and upon their investigation of the laundromat, obtained fingerprints from the restroom door, as well as a composite sketch of the appellant from B.C.'s description.

On May 20, 1984, Officer William Cavett, of the Stillwater Police Department, received a call reported by a neighborhood resident of a suspect near Norgetown Laundry. Upon responding to the call, Cavett observed the appellant wearing a stocking cap, standing behind a business establishment in a vacant car wash. The appellant fled from the police unit as Cavett approached. Cavett then observed the appellant pull a gun from his pants and throw it into a log pile behind a restaurant. The appellant was ultimately placed under arrest, and the gun was retrieved and placed in police custody. He was given his *Miranda* warnings and was interviewed after his arrest by investigator Michael Darty. At trial, Jerry Peters, a fingerprint expert from the Oklahoma State Bureau of Investigation, testified that the prints from the crime scene matched the appellant's prints exclusively. According to B.C., the gun found, when the appellant was arrested, was very much like the one used during the commission of the robbery and sodomy, if not the one used. B.C. identified the appellant in court as the perpetrator of the crimes.

In his first assignment of error, the appellant alleges that the trial court erred when it failed to suppress B.C.'s in-court identification of him as the man who com-

mitted the armed robbery and forced her to orally sodomize him. B.C. had three occasions in which to identify her perpetrator. Three weeks after the commission of the offenses, she observed a photographic lineup in the presence of officers Darty and Wright. She was unable to make a photographic identification because she believed that the poor lighting in the six photographs made all of the individuals appear to be dark skinned black men, which the appellant was not. The next day, B.C. identified the appellant at a corporeal lineup conducted at the Payne County courthouse. Although she had picked the appellant out of a five-man lineup, she expressed a degree of uncertainty. Her uncertainty was premised on the fact that the appellant kept turning and fidgeting during the lineup and would never look straight ahead as he was requested. However, prior to the preliminary hearing, B.C. got a good look at the appellant sitting at a table across from her with two other black men. She was able to study him more closely than she had previously and identified him by his eyes. It was this encounter that affirmed her prior identification at the corporeal lineup, and she was absolutely certain of her in-court identification.

In determining the reliability of an in-court identification, this Court has applied the test set forth in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 2d 140 (1977). These factors include: 1) the prior opportunity of the witness to observe the defendant during the alleged criminal act; 2) the degree of attention of the witness; 3) the accuracy of the witness' prior identification; 4) the witness' level of certainty; and 5) the time between the crime and the confrontation.

B.C. testified that she observed the appellant in the laundromat, in a well lit area, for about 10 to 15 minutes, which was plenty of time for her to get a good look at him, especially his eyes. She could hardly be considered unattentive while she removed the cash drawer with a gun at her side and while being forced to sodomize the appellant with a gun at her head.

Furthermore, B.C.'s description of her attacker matched appellant's physical characteristics very closely, and she was absolutely positive of her in-court identification and remained unwavering during cross-examination. Finally, she chose the appellant out of a corporeal lineup on May 21, 1984, twenty days after the incident. On August 6, 1984, B.C., before the preliminary hearing, got her first real close look at the appellant with two other black men, and was certain from that time. We therefore conclude that the trial court did not err in allowing B.C.'s in-court identification of appellant. This assignment is without merit.

In his second assignment of error, the appellant contends that the testimony concerning his arrest on May 20, 1984, should not have been admitted. He alleges that the arrest and charge which occurred approximately three weeks after the Robbery and Sodomy served no other purpose than to prejudice the jury. According to B.C., the gun which the appellant attempted to dispose of before he was apprehended, was just like the one the appellant used to rob and sodomize her. She described the gun used as being double barrel, just like the one found at the time of the appellant's arrest. Furthermore, the appellant was arrested just outside another laundromat. In *Bruner v. State*, 612 P.2d 1375, 1377 (Okl. Cr.1980), this Court held that "where there is a 'logical connection' with the offense charged, evidence of separate and independent crimes may be admitted."

■ The fact that the handgun found at the arrest scene, possessed by the appellant, was identical to the one used during the crimes in the instant case is highly probative, and its admissibility was clearly not prejudicial. Moreover, absent any form of abuse, the introduction of evidence is a matter solely for the discretion of the trial court. *Camp v. State*, 664 P.2d 1052 (Okl.Cr.1983). We find this assignment is without merit.

Next, the appellant alleges that a statement made by him during police questioning should have been excluded because he contends that he had invoked his right to remain silent. Following the appellant's

arrest on May 20, 1984, he was advised of his *Miranda* rights, indicated a willingness to cooperate with police in their interrogation, and knowingly and voluntarily answered their questions. When police asked the appellant where he had obtained the gun, the appellant said, "I don't want to answer that." He then answered a few more questions after he stated his desire to not answer that one question and then refused to answer any more questions until he was given an attorney. The appellant contends that he indicated a wish to stop talking after he said "I don't want to answer that."

■ On November 15, 1984, the trial court held a *Jackson—Denno* hearing and determined that the answers given by the appellant were admissible, and that the appellant had not requested the questioning to cease nor had he exercised his Fifth Amendment privilege. At that time, the trial court ruled that the statement complained of by the appellant should be admitted. It is a well established rule that the admissibility of evidence is an issue left to the sound discretion of the trial court, whose ruling will not be disturbed absent a clear showing of abuse resulting in prejudice to the accused. *Chatham v. State*, 712 P.2d 72 (Okl.Cr.1986). Moreover, the appellant was identified in court by his victim, fingerprints were found on the bathroom door of the laundromat which matched the appellant's fingerprints and the gun found on the appellant at the time of his arrest was very similar, if not identical, to the one used during the robbery and sodomy. In light of the strong evidence of the appellant's guilt, error, if any, was harmless. Absent an affirmative showing of prejudicial error, the action of the trial court will be affirmed. *Fogle v. State*, 700 P.2d 208 (Okl.Cr.1985). This assignment of error is without merit.

■ The appellant further contends that the prosecution asked improper questions at trial and made improper comments during closing arguments. During cross-examination of the appellant's defense witnesses, John King and Jerry Marshall, the appellant contends that the prosecutor in-

tended to show that the alibi witnesses made up their stories and that the appellant initially remained silent about his alibi because it had not yet been created. We have long held that a trial court should allow cross-examination into matters which tend to explain, contradict, or discredit any testimony given by the witness or which tests his accuracy, memory, veracity or credibility. *Hall v. State*, 698 P.2d 33 (Okl. Cr.1985). The prosecution was merely trying to inquire as to why neither King nor Marshall had contacted the police before the trial to produce the alibi for the appellant.

Additionally, the appellant alleges that the prosecution made comments which invoked the jury's sympathy. It is well established that only when closing argument is grossly improper and unwarranted upon some point which may have affected a defendant's right that reversal can be based on improper argument. *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980). Having thoroughly searched the record, we find no remarks made by the prosecution which exceed the boundaries of liberal freedom of speech. Therefore, we find both contentions relating to prosecutorial statements to be groundless.

In the appellant's fifth proposition, he states that his right to a fair trial was denied due to the interjection of an evidentiary harpoon by Officer Cavett. When asked if the appellant gave the officer his name, Cavett replied that he gave a name, but when they ran a check on it, the police received numerous aliases. Subsequently, the appellant's objection to the remark was sustained, and the trial court properly admonished the jury to disregard the statement. This Court has held that the court's admonition to the jury not to consider the remarks of counsel, or a witness, usually cures an error unless it is of such a matter, after considering the evidence, that the error appears to have determined the verdict. *Zackery v. State*, 572 P.2d 580 (Okl.Cr. 1977). Therefore, the court's admonition adequately remedied any possible error, and the appellant was not prejudiced in any way. This assignment is without merit.

Finally, the appellant contends that even if this Court does not consider the propositions of error to be sufficient for a reversal when considered separately, the cumulative effect of the errors necessitates that this case be remanded for new trial. This Court has consistently held that if previous errors are without merit, then the propositions when considered collectively are also meritless. *Black v. State*, 664 P.2d 1054 (Okl.Cr.1983).

The judgments and sentences are AFFIRMED.

BRETT, P.J., and PARKS, J., concur.