179 P.3d 323

ADA COUNTY HIGHWAY DISTRICT,
a body politic corporate of the State
of Idaho, Plaintiff–Respondent,

v.

TOTAL SUCCESS INVESTMENTS, LLC,
an Idaho limited liability company and
B & C Family Trust, Defendants–Appel-
lants,

and

Home Federal Savings and Loan Associa-
tion, a federally funded thrift; Idaho
Independent Bank, an Idaho banking
association; Boise City Msa Limited
Partnership, d/b/a Verizon Wireless, a
Delaware corporation; and/or John
Does 1–10 as Tenants, Defendants.

Home Federal Savings and Loan
Association, a federally funded
thrift, Cross–Claimant,

v.

Total Success Investments, LLC, an
Idaho limited liability company,
Cross–Defendant.

No. 32726.

Supreme Court of Idaho,
Boise, January 2008.

Feb. 19, 2008.

Neal & Uhl, PLLC., Boise, for appellants. Gary L. Neal argued.

Trout, Jones, Gledhill & Fuhrman, P.A. Boise, for respondents. Kimbell David Gourley argued.

BURDICK, Justice.

This case asks the Court to consider whether a highway district acquired a highway pursuant to I.C. § 40–202(3) and presents other issues including whether the highway district's quiet title action is barred by I.C. § 5–202, whether the acquisition is an unconstitutional taking, and whether the respondent was entitled to a jury trial on the ejectment claim. The district court held the highway district acquired the highway pursuant to I.C. § 40–202(3). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The dispute involves an alley located between 35th and 36th Streets, which connects State Street and Dewey Street, in Boise, Idaho. In 1906, a platted, twelve-foot wide alley was dedicated to the public. In 1957 power poles were placed along the alley which may have forced the misalignment of the alley; they were not placed on the outer edge of the boundary line and, thus, may have caused traffic to travel west of their location.

Appellant Total Success Investments, LLC (TSI) acquired a parcel of land on State Street in 2001. A portion of this land is leased and is used to operate a cell tower facility. The cell tower facility was constructed in 1997 and is surrounded by a fence. Originally, the fence was not placed

on the property line; however the fence was relocated six feet to the east after TSI bought the property, conducted a survey of the property, and discovered the fence was not on its property line. It now sits on the property line. The movement of the fence prevented all but small motor vehicles from using the alley.

Respondent Ada County Highway District (ACHD) filed an action to quiet title asserting it had acquired a highway over a portion of TSI's property between the prior location of the fence and the current location of the fence pursuant to I.C. § 40–202 and an action for ejectment of the relocated fence. After a three day court trial, the district court determined ACHD had met the statutory requirements for the acquisition and had the authority to remove the encroaching fence. TSI appeals.

## II. STANDARD OF REVIEW

█ When review of a trial court's decision involves entwined questions of law and fact, we exercise free review over questions of law, and uphold factual findings supported by substantial and competent evidence. *Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997).

## III. ANALYSIS

█ TSI argues that ACHD did not meet the elements of I.C. § 40–202, ACHD's quiet title action is barred by I.C. § 5–202, there was a spoliation of evidence, I.C. § 40–202 is unconstitutional because it allows an uncompensated taking, it was entitled to a jury trial on the ejectment claim, ejectment is barred by waiver and unclean hands, it was denied due process of law, and that ACHD failed to join indispensable parties.[1] We will address each issue in turn.

### A. Acquisition of the Highway

█ This Court exercises free review over questions of law and does not set aside

factual findings that are supported by substantial and competent evidence. *Marshall,* 130 Idaho at 679, 946 P.2d at 979. This Court freely reviews "whether the facts found are sufficient to satisfy the legal requirements for a public highway through public use and maintenance under I.C. § 40–202." *Burrup v. Stanger,* 114 Idaho 50, 52, 753 P.2d 261, 263 (Ct.App.1998), *aff'd,* 115 Idaho 114, 765 P.2d 139 (1988). "Legally sufficient facts are those which establish, by a prima facie showing, each requirement of the statute." *Id.*

We must determine whether the district court's findings are supported by substantial and competent evidence and then whether those findings support a legal conclusion that ACHD has acquired a highway pursuant to I.C. § 40–202(3). First, however, we will discuss the general requirements to acquire a highway pursuant to I.C. § 40–202(3).

█ The requirements for determining whether a public highway exists are set forth in I.C. § 40–202. According to the statute, a public road may be acquired: (1) if the public uses the road for a period of five years, and (2) the road is worked and kept up at the expense of the public. I.C. § 40–202(3); *Floyd v. Bd. of Comm'rs,* 137 Idaho 718, 724, 52 P.3d 863, 869 (2002). The highway district has the burden of proving by a preponderance of the evidence that public rights were established. *See Floyd,* 137 Idaho at 724, 52 P.3d at 869.

█ Public status of the roadway can be established by proof of regular maintenance and extensive public use. *Id.* There is no intent requirement to create a public road pursuant to I.C. § 40–202(3). *Id.* at 727, 52 P.3d at 872. "[T]he primary factual questions are the frequency, nature and quality of the public's use and maintenance." *Id.* The public must use the road regularly, and the use must be more than only casual or desultory. *Burrup,* 114 Idaho at 53, 753 P.2d at 264.

1. TSI also argues that a tenant cannot act in a manner which divests the landlord of his future interest in the property, *Jordan v. Goodson,* 558 So.2d 848 (Miss.1990); *Thar v. Edwin N. Moran Revocable Trust,* 905 P.2d 413 (Wyo.1995). However, this Court has said we do not consider

issues raised for the first time on appeal. *Kirkman v. Stoker,* 134 Idaho 541, 544, 6 P.3d 397, 400 (2000). TSI did not raise this issue below; therefore, we decline to rule on this issue on appeal.

366

■ Maintenance need only be work and repairs that are reasonably necessary; it is not necessary maintenance be performed in each of the five consecutive years or through the entire length of the road. *Floyd*, 137 Idaho at 724, 52 P.3d at 869 (citing *Roberts v. Swim*, 117 Idaho 9, 16, 784 P.2d 339, 346 (Ct.App.1989); *State v. Nesbitt*, 79 Idaho 1, 6, 310 P.2d 787, 790 (1957), *overruled on other grounds by French v. Sorensen*, 113 Idaho 950, 751 P.2d 98 (1988)).

The district court found:

Beginning no later than 1978, ACHD continuously maintained the alley (including the strip) as was necessary and at public expense. From 1978 through 1986, the alley received maintenance twice per year. After 1986, maintenance was conducted on an annual basis....

The maintenance performed by ACHD included cleaning up trash and debris. More significantly, both in terms of cost and this Court's finding of public use of the alley, regular vehicular traffic in the alley created potholes. The deterioration of the alley caused by this traffic required ACHD crews to annually grade the alley and add gravel to bring the roadway surface up to the level of manhole covers.... Although adjacent property owners occasionally trimmed weeds or filled potholes, ACHD performed the vast majority of maintenance in the alley.

\* \* \*

[M]aintenance of the paved portion consisted of removing weeds and garbage and trimming tree branches. This maintenance was conducted every six to eight months by a "weed crew."

Public funds are expended for the weed crew's maintenance services. ACHD employees supervised Ada County Jail inmates who comprised part of the weed crew. ACHD bears the cost of necessary tools, equipment, and waste disposal. The weed crew maintained the strip until relocation of the fence in 2003. In addition to the weed crew's efforts, ACHD's road sweeper was periodically used to clean the alley.

ACHD's maintenance of the alley was reasonable and necessary to permit public use of the alley. The alley was, in fact, extensively used by members of the public. The testimony from both plaintiff's and defendants' witnesses as to the existence of potholes in the alley was compelling circumstantial evidence of frequent use of the alley by motor vehicles.

Much of the traffic was the result of customers, suppliers, and service providers using the alley to access businesses adjacent to the alley for purposes directly related to those businesses. The greatest volume of testimony related to vehicle access, by way of the alley, to State Street Auto Body. For example, Bob Rice Auto Parts driver Lloyd Hill regularly drove down the alley to deliver parts to State Street Auto Body. In addition, garbage trucks used the alley regularly in order to provide waste disposal service to adjacent businesses and UPS drivers used the alley to make deliveries.

The evidence also showed that members of the public used the alley to access the businesses in order to advance their own business purposes. For example, Gary Stone of Mac Tools ("Stone") used the alley when soliciting business from State Street Auto Body from May 1995, until relocation of the fence prevented such use. He initially used the gravel section of the alley that was later enclosed by the cell tower fence in its original position. After the fence was erected, Stone drove his large delivery van down the paved portion of the alley, including the strip.

The evidence also showed that other members of the public regularly used the alley for purposes apparently unrelated to the adjacent property owners' businesses. For example, the evidence established that sewer system employees regularly used the alley to access manhole covers.

Based on these factual findings, the district court concluded ACHD met the requirements of I.C. § 40–202.

First, this Court must determine if the factual findings are supported by substantial and competent evidence, then we must decide whether the factual findings are sufficient to support a legal conclusion that

ACHD has met the requirements of I.C. § 40–202. *See Marshall*, 130 Idaho at 679, 946 P.2d at 979; *Burrup*, 114 Idaho at 52, 753 P.2d at 263.

### 1. There is substantial and competent evidence supporting the district court's findings.

■ The record supports a finding that maintenance has been performed by ACHD continuously and as necessary from 1978 on. Randy Noble, an ACHD employee testified he performed maintenance (cleaning and upkeep/reapplication of gravel) in the alley, including the strip in question, twice a year from 1978 to the mid to late 1980s and at least once a year thereafter, until relocation of the fence in 2003. He further testified that ACHD bore the cost of this maintenance. David Crepis, an ACHD employee who supervised inmates on labor detail, testified the crew cycled through 900 alleys in Ada County, and Crepis remembers cleaning and pulling weeds on the alley in question three times between 1998 and 2003; he also testified that ACHD bore the costs of the labor they performed. Ivo Foldyna used the alley regularly to access his own business; he testified as to his belief that the alley was reasonably maintained since he never had any issues with access to the alley and the alley "certainly has held up over the years [he has] accessed it." Gary Wood, former owner of the auto body shop, testified that the county "took pretty good care of the alley." Lloyd Hill regularly used the alley from 1968–1992 and testified that he observed gravel maintenance of the alley and that the alley was well maintained during his period of use.

Multiple witnesses testified as to the use of the alley. Ivo Foldyna testified that he used the alley, including the strip in question, to access his own business as well as to access the dumpster on his property from 1989 until relocation of the fence in 2003. Foldyna also testified that delivery drivers would use the alley in order to deliver items to Foldyna's business. Gary Wood owned the auto body shop from the early 1970s until about 1986 and testified that vendors, suppliers, and tow trucks used the alley, including the strip in

question. Fred Roberts testified that he used the alley, including the strip in question, to tow cars. Lloyd Hill testified he used the alley, including the strip in question, almost weekly from 1986–1992 to deliver auto parts. Terry George, current owner of the auto body shop, testified that he used the alley, including the strip in question, regularly. Gary Stone, testified he used the alley almost every week from May 1995 until the fence was relocated in 2003. Randy Noble, testified that while performing maintenance he observed vehicles utilize the alley, including a tow truck. Robert Olson, route supervisor for Allied Waste, testified that he used the "full length" of the alley to empty dumpsters on the alley from 1984 until the cell phone tower was constructed. Ron Doty testified that he used the alley monthly from 1993 until the relocation of the fence in 2003 to tow cars to a bullpen belonging to the auto body shop. Additionally, Fred Roberts testified that he observed the presence of sewer system employees in the alley. Thus, the district court's finding of regular maintenance and public use is supported by substantial and competent evidence in the record.

### 2. The findings support a legal conclusion that a roadway was created.

■ Since the factual findings are supported by substantial and competent evidence in the record, this Court must determine whether these findings support a conclusion of law that ACHD complied with the requirements of I.C. § 40–202(3) and, thus, acquired the strip of land in question as a highway.

TSI argues ACHD has failed to establish an acquisition because ACHD relied on testimony by individuals that do not qualify as members of the public. For the proposition that adjacent landowners and their invitees cannot qualify as "public," TSI cites to *Aztec Ltd., Inc. v. Creekside Investment Co.*, 100 Idaho 566, 602 P.2d 64 (1979). Nonetheless, that case was decided on the failure to meet the requirement to show use for five years. *Id.* at 568, 602 P.2d at 66. Moreover, the language the Court uses suggests the evidence of adjacent landowner use would be

sufficient to establish public use, if the use was for the full statutory period. *See id.; see also Marshall*, 130 Idaho at 680, 946 P.2d at 980 ("[U]se of a roadway by adjoining landowners' invitees and guests .... indeed must be considered general public use.").

The evidence reveals that the strip in question was used frequently by adjacent landowners and individuals accessing the businesses of the adjacent landowners and, therefore, supports a conclusion of extensive public use. Additionally, the evidence in the record supports a conclusion that the road has been maintained by ACHD as necessary since 1978. Thus, we affirm the district court's holding that ACHD met the requirements of I.C. § 40–202(3).

## B. Statute of Limitations

■ TSI argues ACHD's quiet title suit is time barred by I.C. § 5–202. That statute provides:

Actions by state.—The people of this state will not sue any person for or in respect to any real property or the issues or profits thereof, by reason of the right or title of the people to the same, unless:

1. Such right or title shall have accrued within ten (10) years before any action or other proceeding for the same is commenced....

I.C. § 5–202(1).

TSI asserts that according to the district court's findings, ACHD acquired the road in 1984; consequently, according to the plain language of I.C. § 5–202, the quiet title suit should have been commenced in 1994 or earlier, ten years within the accrual of title.

■ Statutory interpretation is a question of law, over which this Court exercises free review. *State v. Yager*, 139 Idaho 680, 689, 85 P.3d 656, 665 (2004). The Court interprets statutes according to their plain, express meaning, but will resort to judicial construction when the statute is "ambiguous, incomplete, absurd, or arguably in conflict with other laws." *Id.* This Court disfavors a statutory construction that would lead to absurd or unreasonably harsh results. *Id.* at 690, 85 P.3d at 666.

In this case, interpreting I.C. § 5–202 according to its plain meaning leads to an absurd result. It would prevent the State from enforcing the right of the public to use a roadway that has been used and maintained by the public for a number of years even if the public's use of that road had never been contested or impeded. According to TSI's reading of the statute, even if the State acted in a timely manner upon the interference with the public's right to use the roadway, as ACHD did in this case, it would be prevented from enforcing a previously uncontested public right to use a roadway. TSI's interpretation would mean the State would have to bring a lawsuit under I.C. § 5–202 every ten years for every highway, street, or alley it believes to be public thoroughfare. The district court's interpretation was a fair reading of the statute: the ten year statute of limitations begins to run upon conduct interfering with the State's claim of right. We hold that because ACHD brought the action within ten years of the encroachment, the suit is not barred by I.C. § 5–202.

## C. Spoliation

■ TSI also argues that the spoliation doctrine requires the imposition of an evidentiary presumption that ACHD did not maintain or expend public funds in maintaining the roadway. The doctrine of spoliation of evidence "provides that when a party with a duty to preserve evidence intentionally destroys it, an inference arises that the destroyed evidence was unfavorable to that party." *Courtney v. Big O Tires, Inc.*, 139 Idaho 821, 824, 87 P.3d 930, 933 (2003) (quoting *Bromley v. Garey*, 132 Idaho 807, 812, 979 P.2d 1165, 1170 (1999) (internal quotations omitted)). The application of the spoliation doctrine is within the discretion of the trial court. *Id.*

■ This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error. *De Los Santos v. J.R. Simplot Co., Inc.*, 126 Idaho 963, 969, 895 P.2d 564, 570 (1995). The record does not contain a decision by the district court regarding spoliation. Consequently, there is

no adverse decision on spoliation for this Court to review.

## D. Taking

 TSI asserts the acquisition of a roadway pursuant to I.C. § 40–202(3) is an unconstitutional taking of property.

 "The constitutionality of a statute is a question of law over which this Court exercises free review." *Moon v. N. Idaho Farmers Ass'n*, 140 Idaho 536, 540, 96 P.3d 637, 641 (2004). The burden of proof is on the party challenging the statute on constitutional grounds and that party "must overcome a strong presumption of validity." *Id.* (quoting *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990) (internal quotations omitted)). "Courts are obligated to seek an interpretation of a statute that upholds its constitutionality." *Id.*

 The U.S. Constitution provides that private property shall not be taken for public use without just compensation. U.S. Const. amend. V. The Fifth Amendment is made applicable to the states through the Fourteenth Amendment. *Texaco, Inc. v. Short*, 454 U.S. 516, 523 n. 11, 102 S.Ct. 781, 788 n. 11, 70 L.Ed.2d 738, 746 n. 11 (1982). The Idaho Constitution provides that "[p]rivate property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor." Idaho Const. art. I, § 14.

 We hold I.C. § 40–202 is not unconstitutional on its face. If a landowner believes the acquisition of a roadway pursuant to I.C. § 40–202 results in a taking, the landowner has four years from the accrual of the cause of action to bring a claim of inverse condemnation. I.C. § 5–224; *C & G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 143, 75 P.3d 194, 197 (2003). Here, TSI

failed to bring an inverse condemnation claim.

## E. Right to Jury Trial

 TSI contends it was entitled to a jury trial on ACHD's ejectment claim and that the district court erred when it granted ACHD's Motion to Strike Demand for Jury Trial.[2] The Idaho Constitution provides that "[t]he right of trial by jury shall remain inviolate." Idaho Const. art. I, § 7. This constitutional right "shall be preserved to the parties inviolate except in the small claims department." I.R.C.P. 38(a). It is generally recognized that the constitutional right to a jury trial applies only to legal claims and not equitable claims. *See e.g., Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 274, 824 P.2d 841, 849 (1991). ACHD moved to strike TSI's demand for a jury trial on the basis that the case is a quiet title action, which is equitable, and there is no right to a jury trial for equitable actions.

 Ejectment requires proof of (1) ownership, (2) possession by the defendants, and (3) refusal of the defendants to surrender possession. *Pro Indiviso, Inc. v. Mid–Mile Holding Trust*, 131 Idaho 741, 745, 963 P.2d 1178, 1182 (1998). We note it was necessary to determine the quiet title portion of the suit before reaching the issue of ejectment. Furthermore, in *Loomis v. Union Pac. R.R. Co.*, 97 Idaho 341, 346, 544 P.2d 299, 304 (1975), this Court held that a suit for quiet title and ejectment was equitable in nature and, therefore, that there was no entitlement to a jury trial on the ejectment claim.[3] Hence, we hold TSI was not entitled to a jury trial on ACHD's ejectment claim.

## F. Waiver and Unclean Hands

TSI asserts that ACHD should be estopped from requiring TSI to move the en-

---

2. TSI also claims it was entitled to a jury trial because ACHD's action "is tantamount to a forcible entry and/or forcible detainer[,]" and that questions of fact regarding a forcible entry and forcible detainer must be determined by a jury, I.C. § 6–313. However, no forcible entry or forcible detainer claim was brought and the law surrounding jury trials for those actions has no relevance in determining whether TSI was entitled to a jury trial on ACHD's ejectment claim.

3. TSI relies on *David Steed & Assocs., Inc. v. Young*, 115 Idaho 247, 766 P.2d 717 (1988). However, that case does not apply here because that case dealt with compulsory counterclaims. Here, the ejectment action was not a compulsory counterclaim.

croaching fence because of waiver and unclean hands.

### 1. Waiver

 TSI asserts that when ACHD participated in the city grant of a permit allowing the tenants to place a fence on the property line, it waived its right over the claimed highway.

 A waiver is a voluntary, intentional relinquishment of a known right and "the party asserting the waiver 'must show that he acted in reasonable reliance upon it and that he thereby has altered his position to his detriment.'" *Fullerton v. Griswold,* 142 Idaho 820, 824, 136 P.3d 291, 295 (2006) (quoting *Margaret H. Wayne Trust v. Lipsky,* 123 Idaho 253, 256, 846 P.2d 904, 907 (1993)).

The district court determined there was no waiver because at the time ACHD participated in the city's grant of the permit it was not aware of its claim of right to the portion of the property in question. TSI asserts ACHD should have known of its claim and cites to *Fullerton,* 142 Idaho at 825, 136 P.3d at 296. In *Fullerton,* this Court upheld the trial court's grant of summary judgment based on waiver. In that case, this Court did not rely only on what the party "should have known." The party had also engaged in several subsequent activities which indicated he waived his contractual right. *Id.* TSI offers no support for its waiver claim other than the contention that ACHD "should have known" it was relinquishing its right over the claimed highway when the city granted the permit. Here, there is no evidence compelling a conclusion that ACHD "should have known" it was intentionally relinquishing a known right. Thus, we hold that in this instance, the participation in the grant of the

city permit was not an intentional relinquishment of a known right.

Additionally, TSI has made no showing that it acted in reasonable reliance to its detriment. The fence was already in place when TSI bought the property. Thus, at the time ACHD allegedly "waived" its right, TSI did not alter its position as it did not own the property when the permit for the fence was granted.

### 2. Unclean Hands

 TSI also argues ACHD's claim should be defeated because it allowed encroachments in its dedicated alley. TSI argues that if ACHD had required Idaho Power to move its utility poles, there would not have been a need to claim it had acquired a roadway pursuant to I.C. § 40–202. TSI further argues that allowing the other encroachments to remain and resolving the problem by claiming acquisition of a roadway invokes the doctrine of unclean hands.[4]

 The clean hands doctrine "stands for the proposition that 'a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue.'" *Gilbert v. Nampa Sch. Dist. No. 131,* 104 Idaho 137, 145, 657 P.2d 1, 9 (1983) (citing 27 Am.Jur.2d Equity § 136 (1996)). A trial court's discretion to apply the clean hands has been stated in broad terms:

> The clean hands doctrine … is not one of absolutes and [it] should be applied in the court's discretion, so as to accomplish its purpose of promoting public policy and the integrity of the courts.
>
> . . .

4. TSI also argues that the district court did not properly make a determination on unclean hands because it did not allow the admission of evidence revealing that the encroaching parties would remove their obstructions from the dedicated alley if requested to do so. The admission of evidence is within the discretion of the trial court. *City of McCall v. Seubert,* 142 Idaho 580, 586–87, 130 P.3d 1118, 1124–25 (2006). ACHD made a motion in limine and argued this evidence was irrelevant and prejudicial. In its written order the district court granted the motion but did not set forth its reasons; the transcript of the hearing on this motion does not appear in the record. The appellant has the burden of showing that the district court committed error. *W. Cmty. Ins. Co. v. Kickers, Inc.,* 137 Idaho 305, 306, 48 P.3d 634, 635 (2002). Error must be affirmatively shown on the record. *Id.* If the record is inadequate to review the appellant's claims, the Court will not presume error below. *Id.* Without the transcript, this Court cannot determine whether the decision to exclude the evidence was an abuse of discretion.

[E]quity will consider the conduct of the adversary, the requirements of public policy, and the relation of the misconduct to the subject matter of the suit and to [the] defendant.

*Id.* at 145–46, 657 P.2d at 9–10 (internal quotations and citations omitted).

Additionally this Court has stated:

In determining if [the clean hands] doctrine applies a court has discretion to evaluate the relative conduct of both parties and to determine whether the conduct of the party seeking an equitable remedy should, in the light of all the circumstances, preclude such relief. A trial court's decision to afford relief based on the unclean hands doctrine, or to reject its application, will not be overturned on appeal absent a demonstration that the lower court abused its discretion.

*Sword v. Sweet*, 140 Idaho 242, 251, 92 P.3d 492, 501 (2004) (internal citations omitted).

 Abuse of discretion is determined by a three part test which asks whether the district court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 479 (2004).

In its written decision the court recognized a determination of unclean hands was within its discretion, and its decision demonstrated an exercise of reason. Furthermore, the court acted within the outer boundaries of its discretion. It recognized ACHD had elected to assert the public's right to use the alley and that TSI "relocated the fence to maximize rental income at the expense of the public's ability to use the alley." Therefore, we affirm the district court's determinations that there was no waiver and that the unclean hands doctrine does not preclude ACHD from quieting title in the roadway or requiring TSI to remove the encroaching fence.

## G. Due Process

 TSI argues it was not afforded due process. Procedural due process "basically requires that a person, whose protected rights are being adjudicated, is afforded an opportunity to be heard in a timely manner." *Powers v. Canyon County*, 108 Idaho 967, 969, 703 P.2d 1342, 1344 (1985). There must be notice and the opportunity to be heard must "occur at a meaningful time and in a meaningful manner. . . ." *Cowan v. Bd. of Comm'rs*, 143 Idaho 501, 512, 148 P.3d 1247, 1258 (2006) (quoting *Aberdeen–Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999)) (internal quotations omitted).

TSI asserts no notice was provided to any of the previous landowners that ACHD was claiming a roadway had been established.[5] However, TSI and its predecessors had notice from the statute itself, I.C. § 40–202(3), which provides that highways include those used and maintained by the public for five years. *See Powers*, 108 Idaho at 970, 703 P.2d at 1345 ("Our entire legal system is based upon the principle that persons are charged with constructive knowledge of the statutes and laws."). Additionally, TSI had the opportunity to be heard at a meaningful time and in a meaningful manner—during a lawsuit initiated by ACHD to quiet title to the portion of the land and for ejectment. TSI had counsel and participated in a three day court trial. Thus, the requirements of procedural due process have been met.

TSI's reliance on *Homestead Farms, Inc. v. Bd. of Comm'rs*, 141 Idaho 855, 119 P.3d 630 (2005), is misplaced; in that case the Commissioners created a map showing public highways. The Court held it was error to place disputed roads on the official map absent clear evidence the roads were established existing public highways and that the map was not a tool to create public highways.

---

5. TSI also argues it was denied due process because it appears ACHD never intended to acquire the roadway. However, ACHD's intent is irrelevant to the issue of whether TSI had notice and an opportunity to be heard. Furthermore, this Court has held there is no intent requirement to create a public road pursuant to I.C. § 40–202. *Floyd*, 137 Idaho at 727, 52 P.3d at 872.

*Id.* at 860, 119 P.3d at 635. The opposite situation has occurred here-ACHD is not using a map as a tool to create public highways; it is adjudicating its right to the roadway. Thus, TSI is not being denied due process by ACHD's choice to adjudicate the right to the roadway before placing it on a map. Likewise, TSI's reliance on *Evers v. County of Custer*, 745 F.2d 1196 (9th Cir.1984), is misplaced. That case involved the issue of whether a county can determine that the requirements for creating a public highway were met without giving the landowner notice or an opportunity to present evidence that the road was her private property. *Id.* at 1201 (in that case the Commissioners issued and recorded a "Declaration of Public Road" absent notice or a hearing). Here, by bringing suit to quiet title, ACHD has given TSI notice of its claim and a meaningful opportunity to be heard.

We hold TSI was afforded due process because it had notice and the opportunity to be heard by virtue of the statute, ACHD's filing of an action to quiet title, and the subsequent trial.

## H. Indispensable Parties

■ TSI argues ACHD has failed to name indispensable parties to this action. TSI asserts Boise City and the United States government should have been named as parties because they have requirements pertaining to cell tower facilities. TSI also asserts ACHD failed to name "the encroaching parties." TSI fails to make any specific articulation of the "encroaching parties" who should have been named; we presume the encroaching parties TSI refers to are Idaho Power and a bank that has landscaping in the dedicated alley.

■ The moving party has the burden to demonstrate the indispensability of a party. *Volco, Inc. v. Lickley*, 126 Idaho 709, 713 n. 6, 889 P.2d 1099, 1103 n. 6 (1995). A party shall be joined if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

I.R.C.P. 19(a)(1).

The disposition of this case is not precluded by the absence of Boise City or the federal government, and the disposition of this case would not impede their ability to protect their own interests or subject them to substantial risk. Likewise, a determination that ACHD has acquired a roadway can be rendered without joining Idaho Power or the bank and the disposition of this case does not impede their ability to protect their own interests or subject them to substantial risk. Therefore, we hold TSI failed to meet its burden to show the indispensability of Boise City, the federal government, Idaho Power, or the bank.

## I. Attorney Fees

TSI requests an award of attorney fees on appeal pursuant to I.C. § 12–121 and I.R.C.P. 11. Idaho Code § 12–121 allows an award of "reasonable attorney's fees to the prevailing party...." TSI does not prevail on this appeal; therefore, it is not entitled to attorney fees. Furthermore, TSI has failed to provide any reason for this Court to impose a sanction pursuant to I.R.C.P. 11(a)(1).

■ ACHD requests an award of attorney fees on appeal pursuant to I.C. §§ 12–121 and 12–117. Idaho Code § 12–121 allows an award of "reasonable attorney's fees to the prevailing party...." Attorney fees are awarded to the prevailing party under this statute when "the action was brought or pursued frivolously, unreasonably or without foundation." *Baker v. Sullivan*, 132 Idaho 746, 751, 979 P.2d 619, 624 (1999). Additionally, pursuant to I.C. § 12–117(1), a prevailing county must be awarded "reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law." We hold this appeal was not frivolous or

unreasonable and, therefore, we decline to award ACHD attorney fees on appeal.

## IV. CONCLUSION

We hold ACHD acquired a highway pursuant to I.C. § 40–202(3) and that its quiet title suit was not barred by I.C. § 5–202. We also hold I.C. § 40–202 is not unconstitutional on its face. Furthermore, we hold TSI was not entitled to a jury trial on the ejectment claim and that ejectment is not barred by waiver or unclean hands. Additionally, we hold TSI received due process of law and that ACHD did not fail to join indispensable parties. Finally, we decline to award either party attorney fees on appeal. Costs to Respondent.

Chief Justice EISMANN and Justice J. JONES and Justices Pro Tem TROUT and KIDWELL concur.

