696 P.2d 920

**Robert JONES, d/b/a Robert Jones Realty, and Bob McKinstry, Plaintiffs-Respondents,**

v.

**Charles MAESTAS, Defendant-Appellant.**

**No. 14830.**

Court of Appeals of Idaho.

Feb. 28, 1985.

Severt Swenson, Jr., and Steven A. Botimer (argued), Gooding, for defendant-appellant.

John T. Lezamiz, and John C. Hohnhorst (argued), Hepworth, Nungester & Felton, Twin Falls, for plaintiffs-respondents.

PER CURIAM.

This is a suit by a real estate brokerage, and its constituent realtors, to collect a sales commission under an exclusive listing agreement. We are asked to decide whether the realtors waived the exclusivity of their listing, committed fraud, or violated a fiduciary duty, by failing to caution the seller against signing additional listing agreements with other agencies. We also are asked to decide whether the listing agreement at issue here was valid despite failure by the brokerage to sign it. By a partial summary judgment the district court held that the agreement was valid and that the brokerage was entitled to a commission. We affirm.

The record, when viewed in best light for the seller, discloses these facts. The seller, Charles Maestas, signed a listing agreement employing Robert Jones Realty to sell a ranch located in Idaho. The agreement provided, in pertinent part, as follows:

*THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale, by me or any other person, or of exchange or conveyance, of said property, or any part thereof, during the term of your exclusive employment, or in case I withdraw the authority hereby given prior to said expiration date, I agree to pay you the said commission just the same as if a sale had actually been consummated by you. I HEREBY CERTIFY THAT I HAVE READ AND RECEIVED A CARBON COPY OF THIS CONTRACT.

At the bottom of the agreement the following language appeared: "TO MAKE NON-EXCLUSIVE strike complete paragraph following asterisk (*) in Employment Contract and have owner initial deletion." No such change was made. The agreement remained, by its clear and prominent language, "exclusive".

When the listing agreement was signed, Maestas informed a Jones Realty agent that he previously had executed several outstanding, nonexclusive listing agreements with other brokerages. Maestas and the agent did not discuss who would be entitled to a commission if a buyer were found by one of the other brokers.

After receiving the exclusive listing, Robert Jones Realty placed the property on a multiple listing service, advertised it and contacted potentially interested parties. However, these efforts bore no fruit. In the meantime, after signing the exclusive

agreement, Maestas was contacted by a realtor at yet another brokerage, known as Ace Realty. Although not a subscriber to the multiple listing service, Ace's agent had heard about Maestas' interest in selling the ranch. Ace proposed that Maestas exchange properties with a landowner in Nevada. Maestas told the Jones agent about the proposed exchange but, again, there was no discussion about entitlement to a commission. Maestas ultimately signed a nonexclusive agreement with Ace, closed the exchange transaction and gave Ace a promissory note for a commission, based on six percent of the value of property exchanged.

Jones Realty then sued Maestas for breach of the exclusive agreement, claiming a six percent commission for itself. Maestas denied any liability to Jones Realty but he also filed a third-party complaint against Ace, seeking indemnification in the event he were held liable for a second commission. When the district court ruled in favor of Jones Realty, the summary judgment was certified as final and this appeal followed.

■ There is no dispute concerning the plain meaning of the exclusive listing agreement. It required the seller to pay Jones Realty a commission on any sale or exchange while the agreement was in force, regardless of whether Jones Realty found the buyer. The record discloses that the practice among real estate brokers was that if a nonlisting broker arranged a sale or exchange, it would receive its compensation from the listing broker. Maestas has not claimed that he was misinformed about, or was unable to understand, the way such an exclusive listing operates. Rather, he simply asserts that he did not read the entire agreement when he signed it and assumed that it, like the agreements he executed with other agencies, was not exclusive. It is axiomatic that failure to read a contract fully will not excuse performance. *Kloppenburg v. Mays*, 60 Idaho 19, 88 P.2d 513 (1939).

Maestas also contends that Jones Realty was obliged to warn him about potential disputes over a commission. He relies upon theories of waiver, fraud and breach of fiduciary duty. We believe these theories are inapposite to the instant case.

■ Waiver is a mixed question of law and fact. A court first must find whether the facts alleged to constitute waiver are true. The court then must decide whether these facts, as a matter of law, suffice to show waiver. Here, even though Jones Realty was aware of other listing agreements, we are not persuaded that such knowledge, coupled with mere silence about a commission, constitutes waiver. The doctrine of implied waiver by silence is disfavored. *Voelker v. Joseph*, 62 Wash.2d 429, 383 P.2d 301 (1963). Waiver will not be inferred except from a clear and unequivocal act manifesting an intent to waive, or from conduct amounting to estoppel. *Union Central Life Insurance Co. v. Shultz*, 45 Idaho 185, 261 P. 235 (1927). There was no failure by Jones Realty to communicate the meaning of the exclusive agreement. It was unequivocally expressed by the instrument itself. Our research has not disclosed, and we decline to create, a rule requiring the reiteration of prior communications upon penalty of waiver.

■ Neither are we persuaded that a prima facie case of fraud has been established. Maestas conceded in his deposition that Jones' agent had not made any misrepresentations about the listing agreement or about the brokerage's entitlement to a commission. Of course, fraud may be established by silence in limited circumstances. One such circumstance is where a duty to speak exists. *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). However, this duty arises only where the information to be conveyed is not already in possession of the other party. *Id.* Here, the information actually had been conveyed and preserved in copies of a document received by both parties.

■ Maestas further asserts that Jones Realty breached a fiduciary duty by failing to emphasize, when the listing

agreement was signed and when the proposed exchange was discussed, that he would owe a commission to Jones Realty if he sold the ranch through a different broker. There is, of course, no doubt about the general principle that a real estate broker stands in a fiduciary relationship with his client. *See Mallory v. Watt*, 100 Idaho 119, 594 P.2d 629 (1979). By reason of that relationship the broker owes his client a duty to disclose information material to the sale of the property. A breach of fiduciary duty may produce liability in damages and loss of entitlement to a commission. *Perkins v. Thorpe*, 106 Idaho 138, 676 P.2d 52 (Ct.App.1984).

 However, the application of this principle to the instant case is not properly before us as an issue on appeal. The threshold inquiry in any appeal from summary judgment is whether there exist genuine issues of material fact. I.R.C.P. 56(c). The question of materiality is determined by reference to the pleadings. *E.g., Argyle v. Slemaker*, 107 Idaho 668, 691 P.2d 1283 (Ct.App.1984). Here, Maestas did not plead a breach of fiduciary duty in his answer to Jones Realty's complaint. The issue has been raised for the first time on appeal. It will not be considered.

 Finally, Maestas notes that Jones Realty failed to sign the listing agreement. He argues that a listing agreement signed only by the seller violates I.C. § 9–508. However, the statute merely provides that a contract of employment to sell real estate must be "in writing [and] signed by the owner of such real estate...." Maestas relies on *C. Forsman Real Estate Co. v. Hatch*, 97 Idaho 511, 547 P.2d 1116 (1976), for the proposition that the broker also must sign in order to satisfy I.C. § 9–508. But our Supreme Court in *Forsman* was asked only to decide whether a contract of employment to sell community property could be signed by one spouse and still comply with I.C. § 9–508. The Court held that one signature was sufficient. In explaining its holding, the Court commented:

> We therefore assume that the legislature selected the word "owner" in I.C. § 9–508 to emphasize the requirement that a brokerage contract would require the signature *not only of the broker*, but also of the party seeking to obtain a purchaser.

*Id.* at 515, 547 P.2d at 1120. (Emphasis added.) Upon this emphasized language, which is purely dictal, Maestas urges us to expand the statute by requiring signatures from both the seller and the broker. We decline to do so. As noted in *Forsman*, the purpose of I.C. § 9–508 "is to prevent fraudulent and unfounded claims of brokers." *Id.* We are not persuaded that fraudulent claims will be prevented by requiring signatures of brokers on their own contracts. Neither do we believe the lack of a broker's signature subjects the seller to any risk of uncertainty as to the identity of the broker where, as here, the broker is named in the text of the instrument. It well may be a prudent practice for brokers to sign such agreements, but we hold that it is not statutorily mandated.

 We have examined other issues raised on appeal and find them to be without merit. We conclude that the district court properly granted partial summary judgment to Jones Realty on the question whether it is entitled to a commission. However, we note that the order for summary judgment does not contain a dollar amount. It remains for the district court to make this determination. Because Jones Realty found no buyer, and another broker consummated the property exchange, we cannot say upon the present record that Jones Realty would have been entitled to retain the entire six percent commission, even if it had been properly paid. *Compare Marshall Brothers, Inc. v. Geisler*, 99 Idaho 734, 588 P.2d 933 (1978) (listing brokers could have claimed entire commission, although they voluntarily sued for a lesser amount, where they found a buyer). The district court also must determine the rights of Maestas and Ace Realty vis-a-vis each other, on the third-party complaint.

The partial summary judgment is affirmed. Costs and attorney fees on appeal to Jones Realty, in an amount to be deter-

mined by the district court, if Jones Realty ultimately is determined to be a prevailing party.