735 P.2d 1047

**SEAPORT CITIZENS BANK,**
**Plaintiff-Appellant,**

v.

**William DIPPEL,**
**Defendant-Respondent.**

No. 16580.

Court of Appeals of Idaho.

March 11, 1987.

Theodore O. Creason, Ware, O'Connell & Creason, Lewiston, for plaintiff-appellant.

Michael J. Trull (argued) and Paul C. Keeton, Keeton, Tait & Petrie, Lewiston, for defendant-respondent.

WALTERS, Chief Judge.

William Dippel, an auctioneer, successfully defended an action for conversion by asserting that the plaintiff, Seaport Citizens Bank, had waived its interest in the proceeds from one of his auctions. Seaport's appeal presents two issues: (1) whether the trial court's determination that Seaport had waived its security interest was supported by the evidence; and (2) whether the court erred by adopting findings of fact and conclusions of law prepared by the defendant's attorney. We hold that the court's finding that Seaport had waived its security interest was supported by substantial and competent evidence. We also hold that adoption of the defendant's proposed findings and conclusions did not constitute reversible error. We affirm.

The record before us provides the following background. In May of 1981, William Dippel received a request to sell the farm equipment of Michael Blewett. As a result of the advertisements for this auction, Seaport Citizens Bank mailed a letter to Dippel advising that Seaport held a security interest in all of Blewett's machinery. In the letter, Seaport asked to be made payee on any disbursements from the auction. The letter was received at Dippel's office at an associated business, but Dippel contends he never saw the letter. However, apparently because he was aware that Blewett had several loan accounts at Seaport, Dippel met with Seaport officers and obtained con-

firmation that Seaport had no objection to the sale going forward.

On the day of the sale Seaport's vice-president in charge of commercial loans personally attended the auction in order to deliver the title to one of Blewett's trucks being sold at the auction. The auction resulted in total cash proceeds of approximately $110,000. Soon after the sale, Dippel's clerk contacted Seaport by telephone to determine the share of the proceeds sought by the bank. According to the clerk's testimony, an employee of Seaport requested $12,420.46. Seven days after the sale, Dippel and his clerk met with the loan officer and the bank president to deliver a check to the bank for that sum. This sum was the amount owing on a note secured by the truck sold at the auction. However, no payment was made upon Blewett's other farm equipment sold at the auction, which had been security for an operating loan.

Approximately two years later Seaport filed this action, contending that Dippel had converted a portion of the other proceeds from the auction to his own use. Dippel asserted affirmative defenses, including estoppel, waiver, and accord and satisfaction. Following trial, the court issued a memorandum opinion, stating in part: "The Court is of the opinion that the Bank by its conduct waived further interest in the proceeds of the equipment sale and planned to collect the other loan from [Blewett's] crop proceeds." Dippel's counsel was directed to prepare proposed findings of fact and conclusions of law, which subsequently were adopted verbatim and endorsed as the court's own. As noted, Seaport challenges both the "waiver" conclusion and the court's procedure for preparing findings and conclusions.

I

We will first examine the conclusion that Seaport waived its interest in the auction proceeds. This action revolves around the proceeds from sale of "Article 9" collateral. Unless displaced by a particular provision of the Uniform Commercial Code, general principles of law and equity are applicable to security interest transactions. I.C. § 28-1-103. Seaport possessed an interest in the proceeds of the sale pursuant to I.C. § 28-9-306(2), which provides that a security interest continues in identifiable proceeds, whether or not the sale of the collateral was authorized.[1]

■ Seaport calls our attention to I.C. § 28-1-107 for the proposition that a waiver must be in writing. We find that provision of the Code inapposite in this case. I.C. § 28-1-107 addresses claims "arising out of an alleged breach."[2] The statute relates to a situation where a breach occurs, a claim arising from the breach is asserted, and the claim then is discharged by a waiver. Here, in contrast, the waiver obviates the breach itself; it does not merely discharge a claim arising from the breach. Thus, if there was a waiver by the bank of Dippel's obligation to pay more than $12,420.46, then there was no breach by Dippel and I.C. § 28-1-107 does not apply. Accordingly, the common-law principles governing waiver are not displaced by the statute in this case. See generally Clovis National Bank v. Thomas, 425 P.2d 726 (N.M.1967); 1 R. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 1-103.69 (1981).

The dispositive question is whether a waiver actually occurred. Dippel acknowledges that Seaport had an interest in the proceeds of the sale, but he contends Seaport's officers waived any interest in the proceeds beyond the amount transmitted by check one week after the sale. Dippel asserts that the conduct of the bank's officers at the meeting following the sale and their failure to demand payment on all of Blewett's accounts are evidence of this waiver.

---

1. Because we conclude that Seaport waived its security interest, we need not determine whether Seaport's interest was perfected under I.C. § 28-9-306(3).

2. Idaho Code § 28-1-107 states that: "Any claim or right arising out of an alleged breach can be discharged in whole or in part without consideration by a written waiver or renunciation signed and delivered by the aggrieved party."

Waiver is a voluntary, intentional relinquishment of a known right or advantage. *Brand S Corp. v. King,* 102 Idaho 731, 639 P.2d 429 (1981); *Crouch v. Bischoff,* 78 Idaho 364, 304 P.2d 646 (1956). Waiver is foremost a question of intent. To establish a waiver, the intention to waive must clearly appear. *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982). Moreover, waiver is a mixed question of law and fact. First, a court must find whether the facts alleged to constitute a waiver are true. Second, the court must decide whether, if true, these facts suffice as a matter of law to show waiver. *Jones v. Maestas,* 108 Idaho 69, 696 P.2d 920 (Ct.App.1985). The doctrine of implied waiver by silence is disfavored. *Id.* Waiver will not be inferred except from a clear and unequivocal act manifesting an intent to waive, or from conduct amounting to estoppel. *Id.* Where a waiver arises out of conduct and partakes of the nature of an estoppel, no consideration is necessary. *Idaho Bank of Commerce v. Chastain,* 86 Idaho 146, 383 P.2d 849 (1963). The law of waiver or estoppel is applicable to cases of conversion by an auctioneer. *See generally* Annotation, *Auctioneer—Liability for Conversion,* 96 A.L.R.2d 208, § 13 (1964).

This case presents elements of both waiver and estoppel. As noted by our Supreme Court, approving and adopting the analysis of a district judge:

> The only distinction that I can observe between an implied waiver such as pleaded here and estoppel would seem to be that in the case of an implied waiver there must be some conduct on the part of the person waiving from which it may be inferred that the person waiving intended to waive; in other words, affirmative action on the part of the person waiving indicating an intention to waive some benefit or advantage; whereas, in estoppel a barrier is simply set up regardless of the parties' intentions which precludes one from asserting a right which he would otherwise have but for the matters and things pleaded by the

way of estoppel, if such matters and things are properly pleaded and proven. In other words, it is conceivable that an estoppel might sometimes apply in a case where at the same time the evidence would not support the conclusion that some right had been impliedly intentionally waived.

*Independent Gas & Oil Co. v. T.B. Smith Co.,* 51 Idaho 710, 720, 10 P.2d 317, 321 (1932) (quoting district court's memorandum opinion).

The testimony in the present case was contradictory and inconclusive concerning Dippel's knowledge of Seaport's liens.[3] Dippel was aware of a purchase money security interest in the truck. However, he did not clearly recall the results of a search of county records apparently conducted by his clerk. The clerk denied any knowledge of the truck lien. She testified that she contacted Seaport following the sale and obtained the amount sought by the bank. Following the sale, she and Dippel met with Seaport's loan officer and its president to deliver a check for the amount requested. Both Dippel and his clerk maintained that they were not aware this amount failed to cover any other lien held by Seaport. Seaport's officers accepted the check. According to the clerk, the officers acknowledged that they were "square" on the sale.

Dippel described the meeting following the sale:

> [W]hen I went up to pay these people off after the sale, I give them what they wanted. They wanted payment for twelve thousand something. You see how the sale was disbursed, and they accepted that. And I asked them whether they was secured, whether they were happy. And they both said that they had a security on the man's crop, and they were satisfied they were taken care of. They were the first people I settled with after the sale.

He continued:

> I recall very distinctly when I—when we paid them, the check we gave them that

---

3. Due to an illness, Dippel was unavailable to testify in person at the trial. Instead, his deposition was presented to the court.

they were happy, and I asked them whether everything was right. And they said: Yes, we have security on his crops, and we're pleased that we got this, and we're going to be all right. And we shook hands, and that was it. There was nothing said about any other equipment being covered, or whether they should have had their name on the check or anything else.

The testimony of Dippel's clerk, who was also present at the meeting, supported this version of the facts. This meeting was also attended by the loan officer and Seaport's president. Although denying any intent to waive Seaport's security interest in the remaining proceeds, those officers did not substantially refute Dippel's description of the meeting. They do not contend that any other security interest in the proceeds was mentioned at the meeting.

Subsequently, Dippel distributed the remainder of the proceeds, primarily to lienholders junior to Seaport. Blewett was not then in default on his operating loan. The current president of Seaport testified that his bank ordinarily looks first to proceeds from crops to repay operating loans. The bank's officers acknowledged that custom-harvesting of Blewett's crops, by a third party, would be a reasonable option despite the equipment sale. Unfortunately, it appears Blewett had a crop failure that year. The court's findings indicate that Seaport made additional small advances to Blewett following the auction. Dippel contends that Seaport expressed no dissatisfaction with his distribution until after Blewett filed for bankruptcy in late 1982. Seaport's former loan officer testified that, between June, 1981 and August, 1982, when the officer left the employ of the bank, no steps were taken to collect any funds in addition to the $12,420 received by the bank from Dippel. In the interim, Dippel, apparently relying upon the conversation with Seaport's officers, had distributed the remaining proceeds.

The question of waiver is mainly a question of intention, which lies at the foundation of the doctrine. Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be intentional. There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby.

*City of Coeur d'Alene v. Spokane & Inland Empire R.R. Co.,* 31 Idaho 160, 166, 169 P. 930, 931 (1917).

Seaport's former loan officer testified that he did not intend to waive any right to these proceeds. The then-president of Seaport stated that he had little recollection of the meetings with Dippel. Apparently, the trial court found Dippel's evidence provided a true description of the events surrounding the payment to Seaport. He concluded the described conduct established an intent by agents of Seaport to waive the bank's security interest in the other farm equipment.

■■■ The task of weighing conflicting evidence rests with the trial court. *Price v. Aztec Limited, Inc.,* 108 Idaho 674, 701 P.2d 294 (Ct.App.1985). A trial court's findings based upon substantial and competent, though conflicting, evidence will not be disturbed on appeal. *Id.* Dippel and his clerk described a meeting where the officers' statements reasonably could be interpreted as waiving any interest in the remaining proceeds. The trial judge was so persuaded and the court's findings in that regard will not be disturbed. The court's conclusion of law that a waiver occurred flows logically from those findings and is not erroneous. We uphold the trial court's determination.

## II

Seaport also challenges the manner in which the court's findings were prepared. The trial judge issued a one-page memorandum opinion briefly stating his reasons for ruling in Dippel's favor. In this statement the judge mistakenly confused two meetings and attributed the payments and discussion leading to a conclusion of waiver to a meeting prior to the sale. We do not find this mistake of substantial importance, as it was a misstatement which was apparent on its face, and was corrected in the formal

findings entered by the court. Importantly, the judge did explicitly find that when Dippel paid the $12,420.46 to the officers of the bank, he was "assured that that payment was satisfactory." The court noted—and it is undisputed—that Seaport "still had a lien upon the crops of Blewett."

The judge instructed Dippel's counsel to prepare "proposed" findings and conclusions. Once presented, these were "endorsed" as the court's own. Contending that findings and conclusions adopted pursuant to such a process cannot be relied upon to reflect the court's independent reasoning, Seaport would have us either set aside the judgment or give less than ordinary weight to these findings.

The practice of delegating the duty of preparing findings and conclusions to the winning party has been denounced. *E.g., Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861 (1977). At minimum, the trial court should seek the assistance of both parties. *Fearless Farris Wholesale, Inc. v. Howell*, 105 Idaho 699, 672 P.2d 577 (Ct.App.1983). However, regardless of who prepares the court's findings and conclusions, no reversible error exists where "those findings and conclusions essential to the decision reached are sufficient and are supported by the evidence." *Cheney v. Jemmett*, 107 Idaho 829, 831, 693 P.2d 1031, 1033 (1984) (quoting *Pline v. Asgrow Seed Co.*, 102 Idaho 827, 833, 642 P.2d 64, 70 (Ct.App.1982)). Moreover, in the present case, the trial court issued a basic opinion of its own design. Although containing a minor misstatement of facts, the court's memorandum opinion set forth the structure of the judgment. The prevailing party's counsel did not write upon a clean slate. The court adopted the offered findings and conclusions as its own.[4] The findings were supported by substantial, competent evidence. The findings supported the court's conclusions. Accordingly, while we continue to discourage the verbatim adoption of lawyer-drafted findings, we find no reversible error.

The judgment is affirmed. Costs to respondent, William Dippel. No attorney fees having been requested on appeal, none will be awarded.

BURNETT and SWANSTROM, JJ., concur.

---

**4.** We continue to be amazed how often counsel's suggested findings and conclusions *exactly* reflect the trial court's *independent* reasoning.