# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47087

RIVER RANGE, LLC,
a Wyoming limited liability company,

    Plaintiff-Appellant,

v.

CITADEL STORAGE, LLC,
an Idaho limited liability company,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2020 Term

Opinion Filed: April 16, 2020

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Nancy A. Baskin, District Judge.

The judgment of the district court is affirmed.

Angstman Johnson, Boise, for appellant River Range, LLC. J. Justin May argued.

Givens Pursley, LLP, Boise, for respondent Citadel Storage, LLC. Thomas E. Dvorak argued.

---

STEGNER, Justice.

This case involves a dispute over the return of earnest money following termination of an agreement to purchase a storage facility between River Range, LLC, (River Range), the buyer, and Citadel Storage, LLC, (Citadel), the seller. Following River Range's termination of the agreement, River Range demanded the return of its earnest money. Citadel refused, arguing that the deadline for the return of the earnest money had passed.

River Range filed a lawsuit, seeking the return of its earnest money. Citadel filed a motion for summary judgment, arguing that under the plain language of the agreement it had no duty to return the money to River Range. The district court granted summary judgment in favor of Citadel. River Range appeals, arguing that the district court erred in holding that (1) the agreement was unambiguous and an addendum eliminated River Range's right to have the earnest money refunded after a certain date; (2) River Range waived its right to terminate the agreement when it did not exercise the right to terminate the agreement by the due diligence deadline; and (3) Citadel did not

1

breach the duty of good faith and fair dealing. For the reasons set out in this opinion, we affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 2018, River Range made a $6,725,000 offer to Citadel to purchase real property and storage units located on Federal Way in Boise (the Property). River Range made the offer using a pre-printed form titled "Idaho Realtor's RE-23 Commercial/Investment Real Estate Purchase and Sale Agreement [PSA]."[1]

In the original PSA, River Range offered $100,000 in earnest money. The earnest money was to be applied to the purchase price at closing. In addition, the offer included a provision regarding a preliminary title commitment:

> [Section 12] PRELIMINARY TITLE COMMITMENT: No later than the Seller Disclosure Deadline, SELLER shall furnish to BUYER, at SELLER's sole cost and expense, a preliminary commitment of a title insurance policy showing the condition of the title to said PROPERTY, together with a copy of each instrument, agreement or document listed as an exception to title in the title commitment that is reasonably available to SELLER. BUYER shall have fifteen (15) business days from receipt of the preliminary commitment within which to object in writing to the condition of the title as set forth in the preliminary commitment. If BUYER does not so object, BUYER shall be deemed to have accepted the conditions of the title. It is agreed that if the title of said PROPERTY is not marketable, or cannot be made so within ten (10) business days after notice containing a written statement of defect is delivered to SELLER, then BUYER, at BUYER's option, may either: (a) terminate this agreement by written notice to the SELLER, in which BUYER's Earnest Money deposit shall be returned to BUYER and neither party shall have any further rights, obligations or liabilities except as expressly set forth in this Agreement; or (b) continue with this Agreement and, if closing occurs, accept title subject to the uncured title defects other than monetary liens. SELLER covenants and agrees that all monetary liens shall be removed by SELLER at closing or insured against by the title insurer, whether or not BUYER has designated such monetary liens as title defects.

On January 23, 2018, Citadel responded to the PSA with Addendum No. 2. Franklin Lee, an attorney for Citadel, drafted Addendum No. 2 specifically for this transaction. Representatives of Citadel and River Range executed the agreement between the parties, including the original PSA, Addendum No. 1, and Addendum No. 2 (collectively the Agreement), on January 24, 2018.

---

[1] River Range's offer also included Addendum No. 1, which required Citadel to inform River Range of competing offers. However, this addendum is not relevant to this appeal.

Addendum No. 2 made several notable changes to the original PSA. First, Addendum No. 2 increased the purchase price to $6,915,000. Second, the addendum modified the provision relating to the earnest money. The addendum reduced the earnest money deposit to $50,000. Additionally, the addendum stated, "[t]he Earnest Money will become nonrefundable if Buyer [fails] to terminate this Agreement by the Due Diligence Deadline for any reason." Third, the addendum added an "as-is" provision to Section 17 of the original PSA. The provision stated that River Range acknowledged that it was "acquiring the Property in its current condition, as is, where is, in reliance solely on Buyer's own inspections and . . . not in reliance on any statement, representation, warranty, promise or agreement of any kind whatsoever by Seller, any broker or agent or representative of either." Fourth, the addendum added two relevant deadlines: (A) the "Seller Disclosure Deadline" on January 29, 2018; and (B) the "Due Diligence Deadline" on February 21, 2018. Finally, Addendum No. 2 provided that "to the extent that the terms of this Addendum modify or conflict with any provisions of the foregoing Agreement . . . the terms of this Addendum control."[2]

The Seller Disclosure Deadline on January 29, 2018, passed without River Range receiving the preliminary title commitment. Rather, River Range received the preliminary title commitment from Citadel on February 16, 2018, more than two weeks after the Seller Disclosure Deadline had passed. The title commitment was dated January 16, 2018.[3] River Range appeared to acknowledge that the fifteen days afforded to it to object to any title issues under Section 12 of the original PSA would run beyond the Due Diligence Deadline specified in Addendum No. 2. This is evidenced by River Range proposing a third addendum on February 21, 2018, the Due Diligence Deadline. That proposed addendum stated,

> Buyer hereby waives the general Due Diligence contingency and shall proceed to closing with a single reservation: namely that Buyer shall cause an ALTA [American Land Title Association] Survey to be completed at Buyer's expense, and should the new ALTA Survey or any new Title Exception that may arise disclose information that was not contained in the provided ALTA Survey or Title Commitment, Section 12 of the PSA shall govern these items, if any, which Buyer was not aware of. In this event, and only this event, Buyer retains the protections of Section 12. Should no new items surface, Buyer hereby waives all rights to object with what is known at the time of the signing of this Addendum #3.

---

[2] There are other provisions contained in Addendum No. 2. However, they are not relevant to this appeal.
[3] Although the title commitment was dated January 16, 2018, it appears that this was a typographical error. It would be unusual for a title commitment to predate the execution of the PSA on January 23, 2018.

However, Citadel refused to sign this addendum. The addendum was later withdrawn by River Range.

On February 22, 2018, Timothy Viole (Viole), the manager of River Range, sent a letter to TitleOne Corporation, the title company, stating that River Range

> waiv[ed] Due Diligence as per the Real Estate Purchase and Sale Agreement (PSA) and Addenda, dated January 24th, 2018. As per the terms of the PSA and subsequent Addenda, River Range, LLC[,] authorizes the Title Company to release the Earnest Money Deposit in the amount of $50,000 to Seller upon receipt of this notice. All other terms and conditions of the PSA and subsequent Addenda shall remain in full force and effect.

The earnest money was released to Citadel in accordance with this letter.

On March 12, 2018, fifteen business days after the receipt of the title commitment but after the Due Diligence Deadline of February 21, 2018, had passed, River Range objected to various "defects" in the title by letter.[4] Citadel responded to the objections through email on March 16, 2018. River Range found Citadel's responses to be inadequate and informed Citadel that River Range intended to terminate the Agreement pursuant to Section 12 of the PSA on March 26, 2018. River Range also demanded the return of its earnest money.

Over the next month, there was confusion regarding the status of the Agreement. On April 9, 2018, Citadel sent a letter to River Range indicating that it believed that the Agreement was still in effect. River Range responded on April 10, 2018, that the Agreement was not still "in effect" and instead proposed that the Agreement be reinstated with different terms. River Range sent a letter to Citadel on April 17, 2018, stating that River Range had terminated the Agreement effective March 26, 2018. River Range again demanded the return of its earnest money. Citadel refused.

On June 20, 2018, River Range filed a complaint against Citadel, seeking the return of its earnest money. River Range alleged two counts. Under Count I, River Range alleged that when it legally terminated the Agreement pursuant to Section 12, Citadel breached the contract by refusing to return the earnest money as required under Section 12. Under Count II, River Range alleged that Citadel had breached the covenant of good faith and fair dealing.

Following the initial pleadings, Citadel filed a motion for summary judgment on three grounds. First, Citadel argued that Addendum No. 2 expressly provided that the earnest money became nonrefundable upon the expiration of the Due Diligence Deadline. Second, Citadel

---

[4] River Range objected to eighteen "defects" in the title relating to taxes, assessments, easements, and other related issues.

contended that River Range had waived its right to request the return of its earnest money because River Range authorized the title company to release the earnest money to Citadel. Third, Citadel argued that the express language of the Agreement precluded River Range's claims of breach of the implied covenant of good faith and fair dealing.

River Range filed a memorandum in opposition to Citadel's motion for summary judgment, disputing all of Citadel's arguments. Additionally, River Range filed a motion to defer summary judgment pursuant to I.R.C.P. 56(d), which the district court denied.[5]

On April 15, 2019, the district court entered a memorandum decision and order granting Citadel's motion for summary judgment. In its decision, the district court concluded that the language in Addendum No. 2 controlled and expressly provided that the earnest money became nonrefundable after the expiration of the Due Diligence Deadline. The district court relied on the language in Addendum No. 2 that stated, "[t]o the extent that the terms of this Addendum modify or conflict with any provisions of the foregoing Agreement, including all prior addendums or counteroffers, the terms of this Addendum control." In addition, the district court determined that River Range had waived its right to terminate the purchase due to the late receipt of the preliminary title commitment when it did not exercise its termination right by February 21, 2018. Finally, the district court found that Citadel had not breached the implied covenant of good faith and fair dealing because Citadel had no obligation to resolve the title issues pursuant to Section 12 of the original PSA. Instead, failure to cure any "defects" in the title merely provided River Range the right to terminate the Agreement; however, the deadline to have the earnest money returned had passed.

Accordingly, the district court entered judgment in favor of Citadel on Counts I and II of River Range's complaint. River Range timely appealed.

## II.  STANDARD OF REVIEW

"When this Court reviews an order for summary judgment, it applies the same standard of review used by the district court in ruling on the motion." *McGimpsey v. D&L Ventures, Inc.*, 165 Idaho 205, 210, 443 P.3d 219, 224 (2019) (citing *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556,

---

[5] The district court heard oral argument regarding River Range's I.R.C.P. 56(d) motion to defer in conjunction with the summary judgment motion. It appears that the district court implicitly denied this motion by considering, and later granting, the motion for summary judgment. Regardless, there is no issue on appeal related to the I.R.C.P. 56(d) motion. Accordingly, this issue is waived on appeal. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (quotation omitted) ("We will not consider an issue not supported by argument and authority in the opening brief.").

212 P.3d 982, 986 (2009)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

> However, the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment. A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment. Instead, the nonmoving party must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial.

*McGimpsey*, 165 Idaho at 210, 443 P.3d at 224 (quotation omitted).

"When an action will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 615, 167 P.3d 748, 752 (2006) (quoting *Shawver v. Huckleberry Estates*, *L.L.C.*, 140 Idaho 354, 360–61, 93 P.3d 685, 691–92 (2004)). "The test for reviewing the inferences drawn by the trial court is whether the record reasonably supports the inferences." *Id.* (citation omitted).

### III. ANALYSIS

### A. The Agreement unambiguously provided that the earnest money became nonrefundable after the Due Diligence Deadline had passed.

The district court found that the Agreement was clear that River Range had until February 21, 2018, to terminate the Agreement *for any reason*. The district court recognized that Section 12 of the original PSA conflicted with the language of Addendum No. 2. In so ruling, the district court relied on Idaho Code section 29-109, which states that if there is a part of a contract that is written or printed under special direction of the parties, the portion that is created for the specific purpose of the agreement controls over pre-printed or form language. I.C. § 29-109. In addition, the district court relied on language in Addendum No. 2 that stated that if the addendum conflicted with any other provision, Addendum No. 2 controlled. Specifically, the Agreement unambiguously provided that the earnest money became nonrefundable after February 21, 2018. As a result, the district court granted summary judgment in favor of Citadel on Count I of River Range's complaint.

On appeal, River Range argues that the district court erred in determining that the Agreement was unambiguous. River Range contends that the Agreement is ambiguous as to

6

whether Addendum No. 2 precludes the return of earnest money in the event of an objection to a title issue after the Due Diligence Deadline had passed. River Range argues that the Agreement set forth *two* distinct provisions that allowed River Range to terminate the Agreement and obtain a return of its earnest money. First, pursuant to the language in Addendum No. 2, River Range could terminate the Agreement "for any reason" during the due diligence period and the earnest money would be returned. Second, pursuant to Section 12, the Agreement allowed River Range to terminate the Agreement if there were title issues that resulted in the property being unmarketable. This provision, River Range argues, also provided for a return of the earnest money even after the Due Diligence Deadline had passed. River Range contends that Section 12 of the original PSA and Addendum No. 2 can be read in harmony. Accordingly, River Range argues that there are conflicting *interpretations* of the Agreement, and the district court should have concluded that there were genuine issues of fact regarding the parties' intent.

In response, Citadel argues that the Agreement is unambiguous. Citadel contends that the district court correctly determined that the two provisions conflicted with each other, and then appropriately applied the language in Addendum No. 2.

"When interpreting a contract, this Court begins with the document's language." *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010) (citing *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 308, 160 P.3d 743, 747 (2007)). "[T]he first step is to determine whether or not there is an ambiguity" in the contract's plain language. *McFarland v. Liberty Ins. Corp.*, 164 Idaho 611, 615, 434 P.3d 215, 219 (2019) (quoting *Clark v. Prudential Prop. & Cas. Ins. Co.*, 138 Idaho 538, 540–41, 66 P.3d 242, 244–45 (2003)). "A contract is ambiguous if it is reasonably subject to conflicting interpretations." *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 796, 452 P.3d 809, 818 (2019) (quoting *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005)). "Determining whether a contract is ambiguous is a question of law over which this Court exercises free review." *Id.* (quotation omitted).

"If the Court finds no ambiguity, 'the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument.'" *Thurston Enters., Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 709, 718, 435 P.3d 489, 498 (2019) (quotation omitted). Interpretation of an unambiguous contract is a question of law and reviewed *de novo*. *Id.* (citation omitted).

"[A]mended agreements should be construed together with the original agreements where possible." *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 607, 38 P.3d 1258, 1263 (2002) (citing *Silver Syndicate, Inc. v. Sunshine Mining Co.*, 101 Idaho 226, 235, 611 P.2d 1011, 1020 (1979)). "However, 'addenda are controlling over any inconsistent provisions in a pre-printed, fill-in-the-blank agreement.'" *Phillips v. Gomez*, 162 Idaho 803, 808, 405 P.3d 588, 593 (2017) (quoting *Johnson v. Lambros*, 143 Idaho 468, 474, 147 P.3d 100, 106 (Ct. App. 2006)); *see also* I.C. § 29-109. "Further, a party's subjective intent is immaterial to the interpretation of the contract." *Phillips*, 162 Idaho at 808, 405 P.3d at 593 (citation omitted). "Instead, courts will give full 'force and effect to the words of the contract without regard to what the parties of the contract thought it meant or what they actually intended it to mean.'" *Id.* (quoting *J.R. Simplot Co.*, 144 Idaho at 614, 167 P.3d at 751); *see also* 17 Am. Jur. 2d *Contracts* § 347 (2004).

Here, the district court did not err in its interpretation of the Agreement. When reading the Agreement as a whole, there is only one reasonable interpretation. Addendum No. 2 provided that "[t]he Earnest Money will become nonrefundable if Buyer [fails] to terminate this Agreement by the Due Diligence Deadline *for any reason*." Consequently, River Range had until February 21, 2018, to terminate the Agreement *for any reason*. "Any reason" would also logically include any issues relating to a defect in the title. Review of the condition of title is a subset of due diligence. In fact, a number of the provisions that followed Section 12 address other due diligence concerns, including reviewing CC&Rs and conducting inspections. Consequently, obtaining and reviewing the title commitment was merely a condition of due diligence which should have been completed by the Due Diligence Deadline of February 21, 2018.

Further, the language in Section 12 conflicts with the language in Addendum No. 2. As a result, the language in Addendum No. 2 indicating the earnest money would be nonrefundable after February 21, 2018, controls. Section 12 conflicts with Addendum No. 2 because the plain language of Section 12 would have allowed the earnest money to be returned after the Due Diligence Deadline had passed. This is clearly in conflict with the language in Addendum No. 2 that the money would become nonrefundable after the Due Diligence Deadline had passed.[6]

---

[6] River Range argues that Section 12 was not specifically modified by Addendum No. 2, and therefore did not change the timing allowed to object to defects in the title in Section 12. While it is true that Addendum No. 2 did not specifically amend Section 12, Addendum No. 2 anticipated that it might also conflict with provisions in the PSA that it did not specifically modify. This is indicated by the inclusion of the following language: "[t]o the extent that the terms of this Addendum modify *or conflict* with any provisions of the foregoing Agreement . . . the terms of this addendum will control." (Italics added.)

8

Because Section 12 of the PSA and Addendum No. 2 conflict, the language provided in Addendum No. 2 controls. There are two reasons for this conclusion. First, as noted above, the prefatory language in Addendum No. 2 provides, "[t]o the extent that the terms of this Addendum modify or conflict with any provisions of the foregoing Agreement . . . the terms of this addendum will control." As the provisions conflict, language in Addendum No. 2 that the earnest money became nonrefundable after February 21, 2018, controls. Second, "addenda are controlling over any inconsistent provisions in a pre-printed, fill-in-the-blank agreement." *Phillips*, 162 Idaho at 808, 405 P.3d at 593 (quotation omitted); I.C. § 29-109. Accordingly, Addendum No. 2 controls. Consequently, the district court did not err in concluding that the earnest money became nonrefundable after the Due Diligence Deadline had passed.

**B.     River Range waived the right to have the earnest money returned.**

In its ruling regarding Count I of River Range's complaint, the district court noted that

> River Range d[id] not claim a breach of the contract due to the late receipt of the preliminary title commitment. Therefore, River Range waived its right to terminate the purchase due to the late receipt of the preliminary title commitment when it did not exercise its termination right by February 21, 2018. *See Steiner v. Ziegler Tamura, Co.*, 138 Idaho 238, 61 P.3d 594 (2002).

On appeal, River Range argues that the district court erred in holding that River Range waived its right to terminate the Agreement due to the late receipt of the preliminary title commitment. River Range argues that the letter sent by Viole, the manager of River Range, was merely a waiver of *general* due diligence and not a waiver of any issues relating to *title*. Accordingly, River Range contends that a genuine issue of material fact remains as to Viole's intent.

In response, Citadel argues that the district court correctly applied *Steiner* to conclude that because River Range proceeded with the purchase despite the passage of the deadline, River Range "waived" its ability to allege default based on the expiration of that deadline. Citadel also argued that River Range expressly waived the right to have its earnest money returned based on the letter Viole sent and the rejected Addendum No. 3 drafted by River Range.

1.    The district court did not err in its application of *Steiner* to the facts of this case.

The only reasoning provided by the district court on the issue of "waiver" is its citation to *Steiner*. In *Steiner*, the parties agreed that the seller of the property would clean the property within ninety days of the acceptance of the agreement. *Steiner*, 138 Idaho at 240, 61 P.3d at 597. The ninety-day clean-up period ended on March 28, 2000. *Id.* However, the clean-up did not occur by

9

that date. *Id.* Rather, the seller did not clean the property until June 20, 2000, approximately ten days before the scheduled closing. *Id.* This Court concluded:

> The record establishes that March 28, 2000, came and went without any complaints by the parties as to the cleanup process. There were some discussions and meetings between the parties as to the cleanup but no demands for the completion were made at the end of the 90–day period. Steiner did not formally complain about the cleanup process until his letter dated June 8, 2000, over two months after the 90–day period had ended. It appears that the parties disregarded the March 28, 2000, deadline and the passage of that deadline alone is insufficient for a breach of contract.

*Id.* at 243, 61 P.3d at 600.

The facts of this case are similar to those in *Steiner*. Here, as in *Steiner*, there was a set deadline by which Citadel was to perform its promise under the Agreement to provide the preliminary title commitment to River Range. However, as this Court observed in *Steiner*, there is nothing in the record suggesting that River Range demanded that Citadel provide the title commitment, nor is there any evidence of complaints that the title commitment had not been provided by the deadline. Instead, River Range proceeded with the purchase, even when the title commitment was provided shortly before the Due Diligence Deadline expired. Using this Court's language from *Steiner*, "[i]t appears that the parties disregarded the . . . deadline and the passage of that deadline alone is insufficient for a breach of contract." *Steiner*, 138 Idaho at 243, 61 P.3d at 600.

Notably, waiver was not the basis upon which this Court determined that there was no breach of contract in *Steiner*. *See id.* (explaining that the parties' conduct was insufficient to support breach). Rather, it appears that this Court held that when a party ignored a deadline, but proceeded with the contract, that party could not then claim *breach* by the passage of that deadline. *Id.* Accordingly, the district court's statement that River Range could not assert a breach of contract based on the late receipt of the preliminary title commitment is correct.

2. <u>River Range expressly waived the right to a return of its earnest money by sending the letter releasing the earnest money to Citadel and attempting to add Addendum No. 3 to the Agreement.</u>

On appeal, Citadel provides an alternate basis to affirm the district court's order granting summary judgment. Citadel alleged below that River Range had expressly waived the right to a return of its earnest money. Although Citadel raised express waiver as an affirmative defense below, the district court never reached a conclusion regarding express waiver. However, as we are reviewing whether Citadel is entitled to judgment as a matter of law, we utilize the same standard

of review as the district court and may determine whether River Range expressly waived its right to the earnest money. *See McGimpsey*, 165 Idaho at 210, 443 P.3d at 224 (citation omitted).

Here, Citadel argues that River Range expressly waived its right to the return of the earnest money when Viole sent the letter to the title company on River Range's behalf waiving due diligence and releasing the earnest money to Citadel, and by proposing Addendum No. 3. In response, River Range contends that waiver is a matter of intent. River Range further argues that because a question of fact remains as to River Range's intent, summary judgment should not have been granted.

"A waiver is a voluntary, intentional relinquishment of a known right or advantage, and the party asserting the waiver must show that he acted in reasonable reliance upon it and that he thereby has altered his position to his detriment." *Knipe Land Co. v. Robertson*, 151 Idaho 449, 457, 259 P.3d 595, 603 (2011) (quoting *Fullerton v. Griswold*, 142 Idaho 820, 824, 136 P.3d 291, 295 (2006)). "Waiver is foremost a question of intent." *Id.* (quoting *Seaport Citizens Bank v. Dippel*, 112 Idaho 736, 739, 735 P.2d 1047, 1050 (Ct. App. 1987)). The party alleging waiver must show a clear intention by the other party to waive before waiver will be established. *Id.* (citation omitted). Further, "[w]aiver will not be inferred except from a clear and unequivocal act manifesting an intent to waive, or from conduct amounting to estoppel." *Id.* at 458, 259 P.3d at 604 (citation omitted). "[W]aiver is a mixed question of law and fact. First, a court must find whether the facts alleged to constitute waiver are true. Second, the court must decide whether, if true, these facts suffice as a matter of law to show waiver." *Id.* (citation omitted).

Here, River Range proposed Addendum No. 3 on February 21, 2018, the Due Diligence Deadline. That proposed addendum stated,

> Buyer hereby waives the general Due Diligence contingency and shall proceed to closing with a single reservation: namely that Buyer shall cause an ALTA Survey to be completed at Buyer's expense, and should the new ALTA Survey or any new Title Exception that may arise disclose information that was not contained in the provided ALTA Survey or Title Commitment, Section 12 of the PSA shall govern these items, if any, which Buyer was not aware of. In this event, and only this event, Buyer retains the protections of Section 12. Should no new items surface, Buyer hereby waives all rights to object with what is known at the time of the signing of this Addendum #3.

Citadel refused to sign this addendum.

Additionally, on February 22, 2018, Viole—River Range's manager—sent a letter to the title company stating, "River Range, LLC, hereby waives Due Diligence as per the Real Estate

11

Purchase and Sale Agreement (PSA) and Addenda, dated January 24th, 2018. As per the terms of the PSA and subsequent Addenda, River Range, LLC authorizes the Title Company to release the Earnest Money Deposit" to Citadel. The title company released the money to Citadel in reliance on this letter.

We hold that River Range expressly waived any interest it had in the earnest money by sending the letter to the title company, releasing its right to the earnest money to Citadel. In the letter, Viole waived due diligence and released the earnest money to Citadel. Once the letter was sent to the title company, River Range waived any interest in the earnest money. Further, as noted above, title concerns are merely a subset of due diligence. As a result, River Range's contention that it was only waiving *general* due diligence and not title concerns is unpersuasive.

Addendum No. 3 also supports the conclusion that River Range expressly waived the right to a return of the earnest money. The proposed and rejected Addendum No. 3 demonstrates that River Range understood that the deadline to object pursuant to Section 12 was the same as the Due Diligence Deadline. However, this Addendum was never signed and was eventually withdrawn by River Range. When Addendum No. 3 was proposed, River Range had two choices: (1) to continue with the contract and have the earnest money released to Citadel; or (2) to terminate the Agreement. River Range chose the former, reflected by the letter Viole sent to the title company. Accordingly, River Range waived any right to have the earnest money returned.

**C.     The district court did not err in granting summary judgment in favor of Citadel on Count II, which asserted a breach of the covenant of good faith and fair dealing.**

Below, River Range alleged in its complaint in Count II that Citadel (1) had been aware of the title defects and did not disclose those defects to River Range during negotiations; (2) did not timely provide the preliminary title commitment to River Range for its review; (3) gave the impression it was willing to attempt to resolve the title issues; and (4) made no attempt to resolve the undisclosed issues.

The district court found that it was undisputed that the preliminary title report was not provided by the Seller Disclosure Deadline on January 29, 2018. Further, it was undisputed that the preliminary title report was provided to River Range on February 16, 2018, five days before the Due Diligence Deadline.

The district court concluded that Citadel had no obligation under the language of the Agreement to resolve any title issues. Further, the district court concluded that even assuming Citadel had indicated a willingness to work with River Range concerning title issues, Addendum

12

No. 2 expressly provided that Citadel was agreeing to provide a special warranty deed which would be "free and clear of any encumbrances arising by or through Seller except real property taxes and assessments not yet due and payable." The district court found that River Range had failed to point to any title issues that arose due to Citadel's actions or omissions. Further, the district court concluded that failure to cure the title defects did not rise to the level of a breach of the covenant of good faith and fair dealing.

On appeal, River Range contends that its basis for arguing breach of the covenant of good faith and fair dealing was based on Citadel's purposeful delay in providing the preliminary title commitment. River Range argues that Citadel intended to reduce the time River Range had to review the title commitment and existing title issues.

Citadel responds, arguing that the district court did not err in finding that Citadel had not breached the implied covenant of good faith and fair dealing. First, Citadel argues that pursuant to the plain language in Addendum No. 2, it had no obligation to return the earnest money to River Range after the deadline had passed. Second, Citadel argues that there is no evidence of a delay in providing the title commitment because the title commitment is within the control of the title company, not Citadel. Further, even if there was an intentional delay, Citadel argues that the delay was not enough to be a breach of the implied covenant of good faith and fair dealing. Additionally, Citadel argues that the property was being sold "as-is." Accordingly, Citadel contends it had no obligation to cure any of the title defects.

"Idaho law recognizes a cause of action for breach of an implied covenant of good faith and fair dealing." *Thurston Enters., Inc.*, 164 Idaho at 722, 435 P.3d at 502 (quoting *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 242, 108 P.3d 380, 389 (2005)).

> No covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties. The covenant requires "that the parties perform in good faith the obligations imposed by their agreement," and a violation of the covenant occurs only when "either party . . . violates, nullifies or significantly impairs any benefit of the . . . contract. . . ."

*Id.* at 722–23, 435 P.3d at 502–03 (omissions in original) (internal citations and quotations omitted) (quoting *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991)).

The district court did not err in concluding that Citadel did not breach the covenant of good faith and fair dealing. First, under the plain language of the Agreement, Citadel had no obligation to cure *any* title defects. Pursuant to Section 12 of the original PSA, River Range had the right to

13

object to issues of title in the preliminary title commitment. However, Citadel had no obligation under Section 12 to resolve the title defects to River Range's satisfaction. Instead, if title was not marketable, River Range had the right to terminate the Agreement. "No covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties." *Thurston Enters., Inc.*, 164 Idaho at 722, 435 P.3d at 502 (citation omitted). Accordingly, failure to cure the defects cannot be a breach of the implied covenant of good faith and fair dealing as requiring Citadel to do so would be contrary to the terms of the Agreement.

Additionally, Addendum No. 2 stated that the type of title that Citadel was agreeing to provide was "free and clear of any encumbrances arising by or through [Citadel] except real property taxes and assessments not yet due and payable." River Range failed to establish anything in the record to indicate that Citadel was not providing the quality of title promised. Therefore, this also cannot be the basis for a breach of the covenant of good faith and fair dealing.

Finally, there is no evidence provided by River Range that there was any purposeful delay in providing the title commitment. The record indicates that title was provided to River Range once Citadel had obtained it. Consequently, the district court did not err in granting summary judgment in favor of Citadel on the claim of a breach of the implied covenant of good faith and fair dealing.

**D.**      **The award of attorney fees to Citadel below is affirmed.**

The district court entered a judgment awarding attorney fees and costs to Citadel.[7] River Range contends that if it prevails on appeal, the judgment awarding attorney fees below should be vacated. River Range did not prevail on appeal. Accordingly, the attorney fees awarded below are affirmed.

**E.**      **Citadel is entitled to attorney fees on appeal.**

Both parties request attorney fees on appeal. River Range and Citadel each request attorney fees on appeal pursuant to a provision in the Agreement. Citadel also requests attorney fees pursuant to Idaho Code section 12-120(3).

Section 31 of the Agreement provides, "[i]f either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's

---

[7] The judgment awarding attorney fees is not included in the record on appeal.

14

fees, including such costs and fees on appeal." As this appeal is based on interpretation of the Agreement, Section 31 of the Agreement applies.

Therefore, as the prevailing party, Citadel is entitled to recover reasonable costs and attorney fees from River Range. Because we find that Citadel is entitled to attorney fees under the language of the Agreement, there is no need to address whether Citadel is entitled to attorney fees pursuant to Idaho Code section 12-120(3). As River Range is not the prevailing party, River Range is not entitled to attorney fees.

## IV. CONCLUSION

For the foregoing reasons, this Court affirms the district court's order on summary judgment in favor of Citadel. Additionally, Citadel is entitled to an award of attorney fees and costs as the prevailing party on appeal.

Chief Justice BURDICK, Justices, BEVAN, MOELLER and KIDWELL, J. Pro Tem, CONCUR.